992 So.2d 5 (2007)
Ex parte Thomas Wade ESSARY.
(In re Latrice Burrell, Irene Banks, and Loretta Pratcher
v.
Thomas Wade Essary).
1060458.
Supreme Court of Alabama.
November 2, 2007.
Rehearing Denied April 25, 2008.
*7 William J. Donald III of Donald, Randall & Donald, Tuscaloosa, for petitioner.
Philip D. Segrest, Jr., Tallassee, for respondent Latrice Burrell.
SMITH, Justice.
Thomas Wade Essary, the defendant below, appeals that part of the judgment of the Court of Civil Appeals reversing the trial court's summary judgment in his favor. Burrell v. Essary, 992 So.2d 1 (Ala. Civ.App.2006). We reverse that portion of the Court of Civil Appeals' judgment and render a judgment in favor of Essary.

Facts and Procedural History
On the evening of May 22, 2002, Essary was driving west on McPherson Landing Road in Tuscaloosa County. Essary reached the intersection of McPherson Landing Road and Highway 69, where a stop sign obligates the westbound traffic on McPherson Landing Road to stop and yield to traffic traveling north and south on Highway 69. There are no stop signs halting traffic traveling on Highway 69. As Essary proceeded through the intersection, his vehicle collided with a vehicle traveling south on Highway 69 that was being driven by Latrice Burrell and occupied by Irene Banks and Loretta Pratcher.
On August 31, 2004, Burrell, Banks, and Pratcher sued Essary and his automobile insurer in the Hale Circuit Court to recover damages for negligence, wantonness, and trespass. The case was later transferred to the Tuscaloosa Circuit Court.
Essary moved for a summary judgment, asserting that the negligence claim was barred by the applicable statute of limitations and that his conduct did not constitute either wantonness or a trespass. Essary supported his motion with, among other things, his deposition and the depositions of Burrell and Banks. Essary testified in his deposition that he did not see Burrell's vehicle when he entered the intersection. Burrell's deposition testimony indicated that Essary made a "rolling stop" at the intersection and that he then pulled out in front of the vehicle she was driving. Essary argued in his motion for a summary judgment that

*8 "the evidence indicates at most that [Essary] made a `rolling stop' and failed to yield the right-of-way. [Essary], without dispute, testified that he looked both ways before entering the intersection and did not see [Burrell's] vehicle approaching. He testified that he may have failed to see [Burrell's] vehicle due to the artificial lighting along the highway. There is no evidence that [Essary] was drunk, intoxicated, that he was conscious that [Burrell's] vehicle was near or that a collision was about to occur. That is, there is no substantial evidence that [Essary's] conduct rose to the level of wantonness, as that term is defined in Alabama."
In opposition to the summary-judgment motion, the plaintiffs submitted, among other things, an affidavit by Burrell, in which she stated that, in her "opinion," Essary came to "rolling stop" at the intersection and, after a vehicle being driven by Erica Banks passed the intersection, accelerated into the intersection as he passed the stop sign. Burrell stated: "In my opinion, he was attempting to `shoot through the gap,' between the lead vehicle and the vehicle I was driving."
After a hearing on the motion, the trial court entered a summary judgment in favor of Essary on all claims. The trial court held, among other things, that there was no substantial evidence of wanton conduct. The trial court subsequently denied a postjudgment motion by the plaintiffs, who then appealed to this Court. We transferred the case to the Alabama Court of Civil Appeals pursuant to Ala.Code 1975, § 12-2-7(6). The Court of Civil Appeals affirmed the trial court's judgment on the negligence claim and the trespass claim, but reversed the trial court's judgment on the wantonness claim, holding that the plaintiffs had established a genuine issue of material fact regarding whether Essary had acted wantonly. Burrell v. Essary, supra. Specifically, the Court of Civil Appeals held:
"Burrell's testimony regarding the circumstances of the collision conflicted with Essary's testimony and tended to prove a set of circumstances from which a jury could draw a `reasonable inference' that Essary knew that the vehicle driven by Burrell was close to the intersection when he accelerated into the intersection despite being aware that his doing so would likely or probably result in injury to the plaintiffs."
992 So.2d at 5. Essary filed an application for rehearing, which the Court of Civil Appeals overruled. He then petitioned this Court for certiorari review alleging, among other things, that the Court of Civil Appeals' decision conflicted with Wilson v. Cuevas, 420 So.2d 62 (Ala.1982). See Rule 39(a)(1)(D), Ala. R.App. P. We granted the petition, and we now reverse the part of the judgment of the Court of Civil Appeals that reversed the trial court's judgment on the wantonness claim and render a judgment in favor of Essary on that claim.

Standard of Review
"`We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:
"`"We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. `Substantial evidence' is `evidence of such weight and quality *9 that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw."'"
General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala.2002) (quoting American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala.2002)). Moreover, "[o]n certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court." Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996).

Discussion
The issue before the Court is whether the Court of Civil Appeals erred in reversing a summary judgment in favor of Essary on the plaintiffs' wantonness count. Essary argues that he produced substantial evidence establishing that no genuine issue of material fact existed as to the wantonness count and that the plaintiffs failed to present substantial evidence creating such an issue. He argues that, at best, the evidence in this case shows only mere negligence.
"Wantonness" has been defined by this Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Bozeman v. Central Bank of the South, 646 So.2d 601 (Ala. 1994). To constitute wantonness, it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone. Joseph v. Staggs, 519 So.2d 952, 954 (Ala. 1988). Also, it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff, only that the actor is "conscious" that injury will likely or probably result from his actions. Id. "Conscious" has been defined as "`perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception'"; "`having an awareness of one's own existence, sensations, and thoughts, and of one's environment; capable of complex response to environment; deliberate.'" Berry v. Fife, 590 So.2d 884, 885 (Ala.1991) (quoting Webster's New Collegiate Dictionary 239 (1981) and The American Heritage Dictionary of the English Language 283 (1969), respectively).
Additionally, when determining if a defendant's actions constitute wanton conduct, it is important for the court to distinguish between wantonness and negligence.
"`"Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury....
"`"Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as... a conscious ... act. `Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.' McNeil v. Munson *10 S.S. Lines, 184 Ala. 420, [423], 63 So. 992 (1913)...."'"
Tolbert v. Tolbert, 903 So.2d 103, 114-15 (Ala.2004) (quoting Ex parte Anderson, 682 So.2d 467, 470 (Ala.1996), quoting in turn Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142, 145-46 (Ala.1987)) (emphasis added).
The determination whether a defendant's acts constitute wanton conduct depends on the facts in each particular case. Ex parte Anderson, 682 So.2d at 470. In support of his motion for a summary judgment, Essary submitted his deposition and the depositions of Burrell and Irene Banks. In his deposition, Essary testified that he drove on McPherson Landing Road frequently and that he was familiar with the intersection where the collision occurred. Essary stated that on the evening of the accident he was traveling west on McPherson Landing Road because he wanted to go to a convenience store to purchase cigarettes. Essary also testified that, as he approached the intersection, he came to a full stop, checked the traffic on Highway 69 in both directions, and did not see any vehicles coming from either the north or the south on Highway 69. Essary then drove out into the intersection, where his vehicle collided with Burrell's.
In her deposition, Burrell described the accident as follows:
"[Essary's counsel:] Okay. All right. I want you to tell me then what happened then, from the time you saw [Essary's] car for the first time until the wreck happened.
"[Burrell:] I was riding behind [Erica Banks's sport-utility vehicle]. [Pratcher] saw the car first and she was starting to tell me that she didn't think that [Essary's] car was going to stop at the stop sign. We were driving and [Banks's sport-utility vehicle] passed the intersection. And [Essary's car] ... was approaching the intersection....
"....
"... He rolled up to the stop sign, but he never came to a complete stop.
"....
"... And by the time that I realized he wasn't going to stop, I threw on the brakes, but I knew I was going to hit him. It was too late.
"[Essary's counsel:] So it sounds like you're describing a car that maybe slowed down but didn't make a full stop.
"[Burrell:] Yes.
"[Essary's counsel:] Made kind of what you call a rolling stop; is that what you're saying?
"[Burrell:] Yes."
Additionally, Burrell stated in an affidavit:
"Mr. Essary appeared, in my opinion, to come to a rolling stop, wherein he observed the lead vehicle containing Mrs. Erica Banks which was right in front of the vehicle I was driving. As he observed Mrs. Banks drive by, he did not stop, but actually accelerated just as he passed the stop sign. In my opinion, he was attempting to `shoot through the gap,' between the lead vehicle and the vehicle I was driving."
On appeal, Essary claims that the facts in this case are similar to the facts in Wilson v. Cuevas, supra, in which this Court held that the defendant's conduct did not constitute wantonness. In Wilson, the plaintiffs, Mr. and Mrs. Wilson, sued the defendant, alleging negligence and wantonness. At the close of the evidence, the trial court granted the defendant's renewed motion for a directed verdict (now a renewed motion for a judgment as a matter of law, see Rule 50, Ala. R. Civ. P.) and dismissed the plaintiffs' wantonness count. The Wilsons later appealed, alleging, *11 among other things, that their wantonness claim should have been submitted to the jury.
The facts at trial in Wilson tended to show the following: The Wilsons were traveling on a motorcycle west on Spring Hill Avenue, a four-lane road running east and west in Mobile. The Wilsons approached Louiselle Street, a two-lane road that runs north and south and intersects with Spring Hill Avenue. Spring Hill Avenue has left-turn lanes in both directions of travel at the Louiselle Street intersection. The defendant, who was traveling east in a vehicle on Spring Hill Avenue, approached the intersection and prepared to make a left turn onto Louiselle Street, which would require that he cross in front of the westbound traffic on Spring Hill Avenue.
Mr. Wilson approached the intersection in the inside lane next to the median; the light at the intersection on Spring Hill Avenue was green. As he entered the intersection, Mrs. Wilson, who was riding behind him on the motorcycle, told him that the light was changing and that the defendant's automobile was approaching. Wilson testified that he next saw the defendant's car suddenly pull out in front of him in an attempt to make the left turn through the intersection. The Wilsons' motorcycle collided with the defendant's vehicle. Wilson, 420 So.2d at 63.
According to the Wilsons, the defendant stated immediately after the accident:
"`[Defendant] said he was very sorry, that he did not even see us, that he did notice this car in the outside lane starting to slow down so he knew that the light was undoubtedly changing and he was going to make his turn onto Louiselle before Louiselle's traffic started moving out, because he was in a hurry to get to the hospital to see his father who was in the intensive care...."
Wilson, 420 So.2d at 64.
We summarized the Wilsons' argument on appeal as follows: "Plaintiffs contend that defendant was trying to `beat' the traffic, and that his act constituted wanton conduct." 420 So.2d at 64. After defining wantonness and noting that the scintilla rule[1] applied, we stated:
"Our review of the facts, in a light most favorable to plaintiffs, leads us to conclude that plaintiffs' case amounted to no more than a showing of negligence; the question of negligence was properly submitted to the jury for its resolution. Although defendant's act, under other circumstances, could constitute wanton conduct, here it does not. The facts do not allow us to reasonably infer that defendant acted with `reckless indifference' to the consequences, had knowledge of the danger present, or otherwise came within the definition of wantonness. Where a case for wanton conduct shows no more than mere negligence, a directed verdict to the count alleging wantonness is properly given."
Wilson, 420 So.2d at 64-65.
Essary argues that the instant case is indistinguishable from Wilson:
"The plaintiffs' allegation in Wilson ( [that] the defendant was trying to `beat the traffic') is indistinguishable from Burrell's allegation in the present case ( [that] Essary was trying to `shoot the gap' between vehicles). In fact, the plaintiffs in Wilson had a stronger argument for wantonness than the plaintiffs in the present case because the Wilson *12 plaintiffs based their wantonness claim on the defendant's statement that he was in a hurry to see his father in the hospital. The plaintiffs in the present case base their allegation on pure speculation by Burrell. There is no reason why the result in the present case should be any different than the [result] in Wilson...."
Essary's brief at 21-22.
The evidence, viewed, as it must be, in a light most favorable to the plaintiffs, the nonmovants, shows that Essary slowed to a "rolling stop" at the intersection and attempted to cross the intersection between two moving vehicles. The plaintiffs' characterization of Essary's attempt to cross the intersection between two vehicles as "accelerating" after a "rolling stop" to "shoot the gap" does not elevate Essary's actual conduct  as observed by the plaintiffs  from the negligent failure to exercise good judgment to a wanton act constituting reckless indifference to a known danger likely to inflict injury. At best, the plaintiffs' evidence shows that Essary, like the defendant in Wilson, made an error in judgment when he attempted to "beat the traffic" or "shoot the gap" by passing between Banks's vehicle and Burrell's vehicle. Wilson holds that such conduct is not wanton.
Although the evidence indicates that Essary knowingly entered the intersection, there is nothing from which the trier of fact could infer that, in moving his vehicle through the intersection, Essary's state of mind contained the requisite consciousness, awareness, or perception that injury was likely to, or would probably, result. Indeed, the risk of injury to Essary himself was as real as any risk of injury to the plaintiffs. Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior. See Griffin Lumber Co. v. Harper, 252 Ala. 93, 95, 39 So.2d 399, 401 (1949) ("There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death. Atlantic Coast Line R. Co. v. Wetherington, 245 Ala. 313(9), 16 So.2d 720 [ (1944) ].").
The facts here presented do not establish any basis from which to conclude that Essary was not possessed of his normal faculties, such as from voluntary intoxication, rendering him indifferent to the risk of injury to himself when crossing the intersection if he collided with another vehicle. Nor is the act as described by Burrell so inherently reckless that we might otherwise impute to Essary a depravity consistent with disregard of instincts of safety and self-preservation. We therefore conclude that, as a matter of law, the plaintiffs failed to offer substantial evidence indicating that Essary was conscious that injury would likely or probably result from his actions.
The plaintiffs contend that Clark v. Black, 630 So.2d 1012 (Ala.1993), supports the holding of the Court of Civil Appeals. In Clark, the plaintiff, a minor, was injured in an automobile accident. The minor and his parents sued the defendant, Black, seeking damages for negligence and wantonness. The trial court directed a verdict for Black on the wantonness count, and the plaintiffs challenged the trial court's ruling on appeal. Clark, 630 So.2d at 1013-14.
The evidence indicated that Black was traveling west on Union Chapel Road when she approached the intersection of Union Chapel Road and Watermelon Road. Black was familiar with the intersection, *13 and she knew that a stop sign required traffic on Union Chapel Road to stop at the intersection. Traffic on Watermelon Road was not required to stop at the intersection, and there was a "hillcrest" on Watermelon Road just north of the intersection that impaired visibility. As Black approached the intersection, she failed to stop, and she entered the intersection and collided with a motorcycle driven by the plaintiff, who was traveling south on Watermelon Road. Testimony at trial by an eyewitness to the accident indicated that Black was traveling at a "very fast speed." Clark, 630 So.2d at 1016. In reversing the directed verdict, we stated:
"[The eyewitness's] testimony presented evidence of such quality and weight that reasonable and fair minded persons could reach different conclusions as to whether the operation of Black's vehicle through the intersection constituted clear and convincing evidence of wantonness. [The eyewitness's] testimony, if believed by the jury, would provide clear and convincing evidence that Black, who was familiar with the intersection, and, consequently, the dangers posed to traffic traveling south on Watermelon Road by the `hillcrest' in that road, ignored the stop sign, or, otherwise wantonly entered the intersection. Consequently, the trial court erred in directing a verdict for Black on the claim alleging wanton conduct."
630 So.2d at 1016 (citations omitted).
The instant case is distinguishable from Clark. The evidence in Clark indicated that the defendant knew of a particular danger at the intersection, that she was traveling at a high rate of speed, and that she ignored a stop sign. No such set of circumstances exist here. There is no evidence indicating that Essary was aware of any particular danger at the intersection of McPherson Landing Road and Highway 69, and he did not speed through the intersection while ignoring the stop sign. Instead, Burrell's testimony shows that when Essary reached the intersection, he slowed and made a "rolling stop." This testimony, unlike the eyewitness's testimony in Clark, does not allow for the reasonable inference that Essary's conduct was wanton.

Conclusion
We reverse the portion of the Court of Civil Appeals' opinion reversing the trial court's judgment on the wantonness claim and we render a judgment in favor of Essary on that claim.
REVERSED IN PART AND JUDGMENT RENDERED.
SEE, LYONS, STUART, BOLIN, and PARKER, JJ., concur.
WOODALL, J., concurs in the result.
COBB, C.J., dissents.
MURDOCK, J., recuses himself.
COBB, Chief Justice (dissenting).
I respectfully dissent from the majority's decision to reverse the Court of Civil Appeals' judgment based on its holding that a genuine issue of material fact exists regarding whether Essary acted wantonly. As the majority correctly notes, in reviewing a summary judgment, this Court, as well as the trial court, is to "`"view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw."'" General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala.2002) (quoting American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002)). In support of their opposition to Essary's motion for a summary judgment, the plaintiffs submitted to the trial court the affidavit of Latrice Burrell. Burrell stated in her affidavit:

*14 "I was driving the vehicle which was hit by Mr. Thomas Essary.
"Just prior to the accident, I noticed Mr. Essary approaching from McPherson Landing Road. He never came to a complete stop at the stop sign.
"Mr. Essary appeared, in my opinion, to come to a rolling stop, wherein he observed the lead vehicle containing Mrs. Erica Banks which was right in front of the vehicle I was driving. As he observed Mrs. Banks drive by, he did not stop, but actually accelerated just as he passed the stop sign. In my opinion, he was attempting to `shoot through the gap' between the lead vehicle and the vehicle I was driving.
"Mrs. Banks'[s] vehicle was driving right in front of me and there were only three or four car lengths between us. There was clearly not enough room between us for Mr. Essary to make it; however, he attempted to do so anyway."
Viewing the evidence in the light most favorable to the nonmovants  in this case Burrell, Irene Banks, and Loretta Pratcher  I agree with the Court of Civil Appeals that Burrell's testimony concerning the circumstances surrounding the automobile collision "tended to prove a set of circumstances from which a jury could draw a `reasonable inference' that Essary knew that the vehicle driven by Burrell was close to the intersection when he accelerated into the intersection and that he consciously accelerated into the intersection despite being aware that his doing so would likely or probably result in injury to the plaintiffs." Burrell v. Essary, 992 So.2d 1, 5 (Ala.Civ.App.2006). When considering a motion for a summary judgment, the trial court does not weigh or determine the veracity of the evidence before it; that is within the purview of the ultimate trier of fact. Instead, the objective of the trial court when considering a summary-judgment motion is to determine whether the evidence before it establishes the existence of a genuine issue of any material fact. See generally Rule 56(c)(3), Ala. R. Civ. P. The evidence, when viewed most favorably toward Burrell, Banks, and Pratcher, indicates that Essary came to a rolling stop at the intersection of McPherson Landing Road and Highway 69, that he saw Erica Banks's vehicle, which was in front of Burrell's vehicle, clear the intersection, and that he then accelerated in an unsuccessful attempt to cross the intersection as Burrell's vehicle approached. I believe these facts present the "other circumstances" not presented in Wilson v. Cuevas, 420 So.2d 62 (Ala.1982), and therefore warrant the reversal of the trial court's summary judgment in favor of Essary on the wantonness claim.
I also write to express my disagreement with the majority's observation that "[a]bsent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior." 992 So.2d at 12. The majority then quotes Griffin Lumber Co. v. Harper, 252 Ala. 93, 95, 39 So.2d 399, 401 (1949), in which this Court noted:
"There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death."
Harper dealt with a single-vehicle automobile accident to which there were no witnesses. A loaded log truck, traveling downhill on a highway, failed to make the *15 curve at the bottom of the hill, hit an abutment with "great force," and landed in a ditch. Both the driver and the passenger were killed. The evidence tended to show that the truck was traveling at approximately 65 to 70 miles per hour as it descended the hill and that the transmission was in gear. Likewise, there were no skid marks, indicating that the driver did not apply the brakes. Holding that the circumstances were sufficient to support a finding that the truck was traveling at an apparently dangerous speed and that the truck driver knew that the speed was dangerous, this Court observed:
"So that question is controlled by the inquiry into the reason for such speed and the reason for not making the curve. As to that reason there is no evidence from which a reasonable inference may be drawn that it was willful or reckless, or that he was not doing what he could to avert the danger. Such brakes on the truck do fail unexpectedly at times, as shown by the evidence. Steering appliances do lock unexpectedly at times, as shown by the evidence. Was the failure of the driver due to such cause? No one can tell."
252 Ala. at 95, 39 So.2d at 401.
When there is an absolute void of eyewitness testimony or direct physical evidence, a rebuttable presumption may exist that "every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection." Harper, 252 Ala. at 95, 39 So.2d at 401. This presumption, however, is not absolute. See, e.g., Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77 (1954) (holding that driver of automobile involved in single-vehicle accident to which there were no witnesses did act with wantonness: the estimated speed at the time of the accident was 75 to 100 miles per hour, the vehicle traveled 705 feet from the time the driver lost control until it came to a stop, the vehicle overturned 10 to 11 times over a distance of 240 feet, and the body of one of the occupants was thrown 72 yards beyond where the vehicle came to rest). As this Court has held: "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence  it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate reference." Roberts v. Brown, 384 So.2d 1047, 1048 (Ala.1980). Unlike the trial court in Harper, the trial court here was presented with evidence indicating that Essary knowingly attempted to cross the intersection in the direct path of the vehicle in which Burrell, Irene Banks, and Pratcher were traveling, consciously disregarding the risk that he may collide with the vehicle. I believe such evidence warranted the denial of Essary's summary-judgment motion on the wantonness claim. Therefore, I respectfully dissent.
NOTES
[1] Under the scintilla rule, a motion for a directed verdict would be denied and the case would go to the jury if the evidence, or any reasonable inference arising therefrom, furnished the "smallest trace, or a scintilla in support of the theory of the complaint." Wilson, 420 So.2d at 64.