PER CURIAM.
In two separate appeals, Gene William Cheshire and Allstate Electric Company, Inc. (“Allstate Electric”), the defendants below, appeal the trial court’s judgment, entered following jury verdicts in the plaintiffs’ favor, and its subsequent denial of their renewed motions for a judgment as a matter of law (“JML”). We affirm in part, reverse in part, and remand.

Facts and Procedural History

Cheshire is an employee of Allstate Electric, an electrical contractor headquartered in Birmingham. On August 25, 2006, Cheshire, who lives in Hanceville, was in Jasper, working as a supervisor at an Allstate Electric job site. Cheshire, who is paid hourly, ended his workday at 3:30 p.m. Cheshire left the job site in his personal truck, which he uses in the course of his employment with Allstate Electric; Allstate Electric furnishes the gasoline for Cheshire’s truck. Cheshire was hauling a trailer behind his truck that did not belong to Allstate Electric. On his way home, Cheshire drove to a Home Depot building-supply store to buy drywall for his personal use. After leaving the Home Depot store, Cheshire stopped at a convenience store to purchase a soft drink. Leaving the convenience store, Cheshire began driving north on Highway 69 to Hanceville. Having worked for approximately eight weeks at the Jasper job site, Cheshire had driven Highway 69 numerous times. Cheshire testified that he was familiar with Highway 69 and knew that “on both sides of the road there are driveways and roads and places to turn all along the way.” Shortly after 4:00 p.m., Cheshire drove his vehicle into the back end of a vehicle being driven by Pearl Putman, who had stopped to make a left-hand turn off Highway 69. The force of the collision propelled Put- *338 man’s vehicle forward, causing it to collide with a utility pole. Cheshire testified that “he didn’t realize the vehicle was stopped until the last minute.” Putman was stopped just over the crest of a hill.
Riding as passengers in Putman’s vehicle were two of her minor grandchildren, Alexander Akins and Morgan Akins (Put-man, Alexander Akins, and Morgan Akins are hereinafter referred to collectively as “the plaintiffs”). All three of the plaintiffs were injured in the accident. Morgan Akins, who was not wearing her seatbelt at the time of the accident, was the most severely injured; she suffered a traumatic brain injury. Putman suffered a fractured rib. Alexander Akins briefly lost consciousness and suffered cuts and bruises.
Cheshire stated that, before the impact, he was traveling between 55 and 60 miles per hour. Cheshire testified that he was not “paying that much attention” to whether Putman’s vehicle was in front of his truck on Highway 69 until he saw her vehicle stopped in the road about 50 yards ahead of him; Cheshire testified that he was “focusing on driving [his] car,” and not on which specific car was in front of him. Cheshire also testified that he knew that Highway 69 is a two-lane road with numerous intersecting driveways and crossroads. Cheshire stated that he was aware that a driver making a left turn off Highway 69 onto one of the numerous intersecting driveways or crossroads might have to come to a complete stop and wait for traffic to clear before proceeding. Cheshire stated that he misjudged the time he would need in order to stop his truck and trailer to avoid hitting Putman’s vehicle. Cheshire also testified that he was aware that it would take more time to stop his truck than it normally would because he was hauling a trailer. Cheshire stated that he was aware that he “would have to alter [his] driving habits to be more safe if [he was] pulling a trailer than if [he did not] have a trailer.” The Alabama state trooper who responded to the scene of the accident testified that he told Cheshire at the scene of the accident that, in his opinion, Cheshire was driving too fast considering the weight of the trailer he was hauling.
There was no evidence indicating that Cheshire was intoxicated, impaired, or driving erratically at the time of the accident. Charlotte Bates testified that she was driving behind Cheshire’s truck before the accident and that she saw nothing unsafe or unusual about his driving. Similarly, Audra Borden was also driving behind Cheshire’s truck at the time of the accident and testified that Cheshire showed no erratic behavior while driving and that he was not driving at an excessive speed.
The plaintiffs presented evidence indicating that there was sufficient room on the shoulder of Highway 69 for Cheshire to have maneuvered his truck off Highway 69 onto the shoulder, thereby avoiding the collision with Putman’s vehicle. Cheshire agreed that swerving off Highway 69 onto the shoulder would have been a prudent maneuver, but he stated that everything happened so quickly he did not have time to respond in that manner.
On August 29, 2006, the plaintiffs sued Cheshire and Allstate Electric. The plaintiffs alleged against Cheshire negligence and wantonness. The plaintiffs alleged against Allstate Electric negligent and wanton hiring, training, and supervision. The plaintiffs also sought to hold Allstate Electric vicariously hable for Cheshire’s allegedly negligent and/or wanton conduct.
The case went to trial in April 2008. At the close of the plaintiffs’ evidence, Cheshire and Allstate Electric each filed a motion for a JML on all the claims against them, which motions were denied. At the *339 close of all the evidence, Cheshire and Allstate Electric each expressly renewed their motions for a JML. The trial court denied Cheshire’s motion for a JML. The trial court granted Allstate Electric’s motion for a JML as to the plaintiffs’ claim for wanton hiring, training, and supervision, but denied the motion as to the remaining claims against Allstate Electric.
The jury returned general verdicts in favor of the plaintiffs and against Cheshire and Allstate Electric on all claims. The jury awarded the plaintiffs damages, as follows: Putman was awarded compensatory damages in the amount of $25,000 and punitive damages in the amount of $25,000; Alexander Akins was awarded compensatory damages in the amount of $80,000 and punitive damages in the amount of $25,000; and Morgan Akins was awarded compensatory damages in the amount of $150,000 and punitive damages in the amount of $6,000,000. On May 28, 2008, the plaintiffs filed a motion for a new trial alleging, in pertinent part, that the compensatory-damages award to Morgan was inadequate.
Allstate Electric renewed its motion for a JML on the vicarious-liability claims against it arguing that the evidence that the accident occurred while Cheshire was acting in the scope of his employment with Allstate Electric was insufficient. Allstate Electric sought a JML on all claims seeking punitive damages because, Allstate Electric argued, punitive damages could not be awarded against Allstate Electric under § 6-11-27, Ala.Code 1975.[1] Cheshire and Allstate Electric sought a JML on all claims seeking punitive damages because, they argued, the plaintiffs failed to present clear and convincing evidence of Cheshire’s wantonness. Alternatively, Cheshire and Allstate Electric sought a reduction in the punitive-damages award to Morgan Akins so that the award would comply with § 6-11-21, Ala.Code 1975,[2] and with constitutional due-process limits. Cheshire and Allstate Electric did not move for a new trial.
The plaintiffs conceded that Morgan Akins’s punitive-damages award was excessive. The plaintiffs submitted a proposed order denying Cheshire’s and Allstate Electric’s renewed motions for a JML, reducing each of the plaintiffs’ punitive-damages awards, and permitting the plaintiffs either to accept the reduction of the punitive-damages awards or to elect a new trial. The trial court entered the plaintiffs’ proposed order as its judgment. The plaintiffs then elected a new trial. Cheshire and Allstate Electric separately appealed. The appeals have been consolidated for purposes of writing one opinion.

*340
Standard of Review

In American National Fire Insurance Co. v. Hughes, 624 So.2d 1362 (Ala.1993), this Court set out the standard that applies to the appellate' review of a trial court’s ruling on a motion for a JML:
“The standard of review applicable to a ruling on a motion for JNOV [now referred to as a renewed motion for a JML] is identical to the standard used by the trial court in granting or denying a motion for directed verdict [now referred to as a motion for a JML], Thus, in reviewing the trial court’s ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.”
624 So.2d at 1366 (citations omitted). Further, in Cessna Aircraft Co. v. Trzcinski, 682 So.2d 17 (Ala.1996), this Court held:
“The motion for a J.N.O.V. [now referred to as a renewed motion for a JML] is a procedural device used to challenge the sufficiency of the evidence to support the jury’s verdict. See, Rule 50(b), [Ala.] R. Civ. P.; Luker v. City of Brantley, 520 So.2d 517 (Ala.1987). Ordinarily, the denial of a directed verdict [now referred to as a JML] or a J.N.O.V. is proper where the nonmoving party has produced substantial evidence to support each element of his claim. However, if punitive damages are at issue in a motion for a directed verdict or a J.N.O.V., then the ‘clear and convincing’ standard applies. Senn v. Alabama Gas Corp., 619 So.2d 1320 (Ala.1993).”
682 So.2d at 19 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989). See § 12-21-12(d), Ala.Code 1975.

Discussion

First, Allstate Electric argues that the plaintiffs did not present substantial evidence that Cheshire was acting within the course and scope of his employment when the accident occurred. Allstate Electric cites Shaw v. C.B. & E., Inc., 630 So.2d 401, 404 (Ala.1993), for the general proposition that “[a]ccidents that occur while an individual is travelling to and from work are not considered to have arisen out of and in the course of employment.” However, Shaw goes on to acknowledge that “[a]n exception to this rule arises when the driver/worker’s transportation expenses constitute a part of the consideration paid for his services.” 630 So.2d at 404. Although it is undisputed that Allstate Electric pays for the gasoline for Cheshire’s truck, Allstate Electric, in its initial brief, does not address this exception.
In arguing that there was substantial evidence supporting Allstate Electric’s liability for Cheshire’s tortious conduct, the plaintiffs rely, in pertinent part, upon the fact that Allstate Electric pays for Cheshire’s gasoline for his truck, which he uses to travel to and from the job site. In reply, Allstate Electric concedes that there is an “exception to [the] rule that going to and from work is not in [the] course and scope of employment ... when [the] employer ‘reimburses [the employee] for travel expenses.’” Allstate Electric’s reply brief, at 7 (quoting Ex parte Shelby County Health Care Auth., 850 So.2d 332, 336 (Ala.2002)). However, because Allstate Electric itself pays for the gasoline for Cheshire’s truck, it argues that “Cheshire ... is not ‘reimbursed’ for gas expenses as is required to fall under the exception.” Allstate Electric’s reply brief, *341 at 7. “We decline to consider an argument made for the first time in a reply brief.” City of Bessemer v. McClain, 957 So.2d 1061, 1079 (Ala.2006). At any rate, Allstate Electric does not explain why the distinction between direct payment and reimbursement of transportation expenses is material, and it cites no authority supporting such a conclusion. “This Court will not ‘create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.’ ” S.B. v. Saint James School, 959 So.2d 72, 89 (Ala.2006) (quoting Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992)).
Allstate Electric also argues, relying on Newsome v. Mead Corp., 674 So.2d 581 (Ala.Civ.App.1995), that Cheshire was engaged in a personal errand at the time of the accident and that he was not accomplishing any objective of Allstate Electric’s. Thus, Allstate Electric argues, Cheshire was not operating within the course and scope of his employment. In Newsome, an employee drove his personal vehicle from his place of employment to a restaurant to pick up food for himself and his coworkers. The employee was “on the clock” during this errand, and the employee’s supervisor gave him permission to run the errand. While on this errand, the employee was involved in an accident with another vehicle. The driver of the other vehicle sued the employee’s employer under the doctrine of respondeat superior. The employer moved for a summary judgment based on the employee’s and the employer’s affidavit testimony that the employee was not accomplishing any objective of the employer’s but was on a personal errand at the time of the accident. The trial court entered a summary judgment in favor of the employer. In a 3-2 decision, the Court of Civil Appeals affirmed the trial court’s judgment, holding that the plaintiff did not present substantial evidence in opposition to the employer’s motion for a summary judgment.
In the present case, Allstate Electric argues that Cheshire was not “on the clock” when the accident occurred; that Cheshire did not drive straight home from work, but stopped first at a Home Depot store to pick up supplies for a personal project and then at a convenience store to buy a soft drink before continuing home; and that Cheshire was driving his personal truck at the time of the accident. These facts, Allstate Electric argues, show that Cheshire, like the employee in Newsome, was on a personal errand at the time of the accident and, thus, was not operating within the course and scope of his employment. However, the present case is distinguishable from Newsome. Unlike Allstate Electric, the employer in Newsome provided no compensation for the employee’s use of his personal car. In contrast, Allstate Electric provided the gas for Cheshire’s personal truck.
Also, nothing in the record indicates that Cheshire was traveling a substantially different route home than he normally traveled when he drove home. Instead, it appears that Cheshire was taking the same route home he always did, whether or not he had made a stop or two for personal reasons.
We conclude that the plaintiffs presented substantial evidence indicating that Cheshire was operating within the course and scope of his employment with Allstate Electric at the time of the accident. Therefore, the trial court properly denied Allstate Electric’s renewed motion for a JML as to the issue of its vicarious liability for Cheshire’s conduct under the doctrine of respondeat superior.
Next, Cheshire and Allstate Electric argue that, as a matter of law, the plaintiffs are not entitled to punitive damages. Cheshire and Allstate Electric con *342 tend that the plaintiffs’ claims for punitive damages should not have gone to the jury because, they say, the plaintiffs did not satisfy their burden of proof of presenting clear and convincing evidence of Cheshire’s allegedly wanton conduct. Cheshire and Allstate Electric do not challenge the compensatory-damages awards on appeal.
In Cessna Aircraft Co., supra, this Court held:
“Section 6-ll-20(a), Ala.Code 1975, provides that punitive damages may be awarded in tort actions ‘where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in ... wantonness’ that caused injury to the plaintiff. ‘Clear and convincing evidence’ is defined in the Code:
“ ‘Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.’
“Ala.Code 1975, § 6-ll-20(b)(4).
“Thus, the ‘clear and convincing1 standard requires the trial judge to do more than merely determine whether the non-moving party has presented substantial evidence to support the claim for punitive damages. It is not the trial judge’s function when ruling on a directed verdict [now referred to as a JML] or J.N.O.V. [now referred to as a postver-dict JML] motion to weigh the evidence; rather, he must view the evidence in a light most favorable to the nonmoving party. If in viewing the evidence in that light the judge reasonably can conclude that a jury could find the facts in favor of the nonmovant and that the jury could be firmly convinced of that decision after considering the evidence in opposition, then the judge should deny the motion.
[[Image here]]
“ ‘Wantonness’ is defined by § 6-11-20(b)(3)as ‘[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.’ Furthermore, this Court has held on more than one occasion that ‘wantonness’ is not merely a higher degree of negligence; instead, it is a ‘qualitatively different tort concept of actionable culpability.’ Lynn Strickland Sales & Service Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala.1987). While a party claiming wantonness does not have to prove an intent to injure, this Court has held that wantonness requires proof of some degree of conscious culpability. Yamaha Motor Co., Ltd. v. Thornton, 579 So.2d 619, 623 (Ala.1991). See also, Hamme v. CSX Transportation, Inc., 621 So.2d 281 (Ala.1993).”
682 So.2d at 19-20.
In Ex parte Anderson, 682 So.2d 467 (Ala.1996), this Court discussed wantonness in the context of operating a vehicle:
“What constitutes wanton misconduct depends on the facts presented in each particular case. Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371 (Ala.1989); Brown v. Turner, 497 So.2d 1119 (Ala.1986); Trahan v. Cook, 288 Ala. 704, 265 So.2d 125 (1972). A majority of this Court, in Lynn Strickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala.1987), emphasized that wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, *343 is not to be confused with negligence (i.e., mere inadvertence):
“ ‘Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury....
“ ‘Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. “Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.” McNeil v. Munson S.S. Lines, 184 Ala. 420, [423], 63 So. 992 (1913)....
[[Image here]]
“ ‘ “Willful and wanton conduct has a well-defined meaning at law. It is sometimes expressed in terms of ‘reckless disregard of the safety of another.’ Willful and wanton conduct should not be confused with negligence. It has been correctly stated that the two concepts are as ‘unmixable as oil and water.’
[[Image here]]
“ ‘ . Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term ‘negligence,’ which conveys the idea of inadvertence, as distinguished from premeditation or formed intention.” ’
“510 So.2d at 145-46 (citations omitted). See also, Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371 (Ala.1989).”
682 So.2d at 470.
This Court has also stated that “[i]f there is any evidence from which a jury can reasonably infer wantonness, the issue should be presented to the jury.” Sellers v. Sexton, 576 So.2d 172, 175 (Ala.1991) (citing McDougle v. Shaddrix, 534 So.2d 228 (Ala.1988)). See also Clark v. Black, 630 So.2d 1012 (Ala.1993).
On appeal, Cheshire claims that the facts in this case are similar to the facts in Ex parte Essary, 992 So.2d 5 (Ala.2007), an automobile-accident case in which this Court held there was no evidence of wantonness. In Essary, the defendant was driving his vehicle west and approached an intersection where a stop sign obligated traffic traveling in her direction to stop and yield to traffic traveling north or south on the intersecting road. There was no stop sign halting the northbound or southbound traffic on the intersecting road. As the defendant proceeded through the intersection, his vehicle collided with a vehicle traveling north on the intersecting road. The driver and occupants of the northbound vehicle sued the defendant, asserting, among other claims, a claim of wantonness. The trial court entered a summary judgment in favor of the defendant on the wantonness claim. The plaintiffs appealed, and the Court of Civil Appeals reversed the trial court’s judgment. The defendant petitioned this Court for certiorari review of the Court of Civil Appeals’ decision. In reversing the Court of Civil Appeals’ decision, this Court held that, even when the evidence was viewed in a light most favorable to the plaintiffs, *344 there was no evidence of wantonness on the defendant’s part:
“The evidence, viewed, as it must be, in a light most favorable to the plaintiffs, the nonmovants, shows that [the defendant] slowed to a ‘rolling stop’ at the intersection and attempted to cross the intersection between two moving vehicles. The plaintiffs’ characterization of [the defendant’s] attempt to cross the intersection between two vehicles as ‘accelerating’ after a ‘rolling stop’ to ‘shoot the gap’ does not elevate [the defendant’s] actual conduct — as observed by the plaintiffs — from the negligent failure to exercise good judgment to a wanton act constituting reckless indifference to a known danger likely to inflict injury. At best, the plaintiffs’ evidence shows that [the defendant] ,.. made an error in judgment when he attempted to ‘beat the traffic’ or ‘shoot the gap’ by passing between [two vehicles]....
“Although the evidence indicates that [the defendant] knowingly entered the intersection, there is nothing from which the trier of fact could infer that, in moving his vehicle through the intersection, [the defendant’s] state of mind contained the requisite consciousness, awareness, or perception that injury was likely to, or would probably, result....
“The facts here presented do not establish any basis from which to conclude that [the defendant] was not possessed of his normal faculties, such as from voluntary intoxication, rendering him indifferent to the risk of injury to himself when crossing the intersection if he collided with another vehicle. Nor is the act ... so inherently reckless that we might otherwise impute to [the defendant] a depravity consistent with disregard of instincts of safety and self-preservation. We therefore conclude that, as a matter of law, the plaintiffs failed to offer substantial evidence indicating that [the defendant] was conscious that injury would likely or probably result from his actions.”
992 So.2d at 12.
In the present case, a review of the evidence, viewed in a light most favorable to the plaintiffs, convinces us that the plaintiffs have not presented sufficient evidence as to each essential element of the claim of wantonness and to show a high probability as to the correctness of the conclusion that Cheshire’s operation of his vehicle amounted to “a wanton act constituting reckless indifference to a known danger likely to inflict injury.” Essary, 992 So.2d at 12. The plaintiffs' evidence indicates that Cheshire was familiar with the road on which the accident occurred, that Cheshire knew that vehicles were often stopped in the roadway waiting for traffic to clear in order to make a left turn, that Cheshire does not recall seeing Put-man’s vehicle in front of him before the accident, that Cheshire was aware that, in order to safely operate his truck while pulling a trailer, he needed to alter his driving habits, that Cheshire misjudged the distance it would take to stop his vehicle and the trailer, that maneuvering his vehicle onto the shoulder of Highway 69 would have been a prudent response if he had had the time to respond, and that a driver should keep a proper lookout while driving. The evidence is insufficient to produce in the mind of the trier of fact a firm conviction as to each essential element of wantonness, which requires some degree of conscious culpability. George v. Champion Ins. Co., 591 So.2d 852, 854 (Ala.1991). There is no evidence to convince a trier of fact that Cheshire consciously disregarded his familiarity with Highway 69 and operated his vehicle in such a manner that injury to someone was likely to occur. Cheshire’s familiarity with Highway 69, coupled with the fact that he *345 caused an accident to occur, is not clear and convincing evidence from which a jury could reasonably infer that Cheshire operated his vehicle wantonly. Instead, as in Essary, the evidence merely establishes that Cheshire made an error in judgment. Therefore, the trial court erred in denying Cheshire’s and Allstate Electric’s motions for a JML as to the wantonness claim.
The plaintiffs also presented evidence of Cheshire’s conduct immediately following the accident. Specifically, the plaintiffs presented evidence showing that Cheshire did not check on the occupants of Putman’s vehicle and that he did not attempt to help in any way. However, such evidence is not germane to determining whether Cheshire was possessed of his normal faculties before or at the time of the accident. Therefore, such evidence is irrelevant to whether Cheshire was operating his vehicle wantonly at the time of the accident.
Cheshire and Allstate Electric also present arguments concerning the amount of the punitive damages, which are rendered moot in light of our holding that the trial court’s denial of Cheshire and Allstate Electric’s renewed motions for a JML was error as to the plaintiffs’ wantonness claim against Cheshire.

Conclusion

Based on the foregoing, we conclude that the trial court’s judgment is affirmed in part, reversed in part, and remanded. The plaintiffs presented substantial evidence that Cheshire was operating within the course and scope of his employment at the time of the accident; thus, we affirm the trial court’s judgment insofar as it held that Allstate Electric was vicariously liable for Cheshire’s conduct. However, the plaintiffs failed to present evidence sufficient to produce in the mind of the trier of fact a firm conviction as to each essential element of the claim of wantonness and a high probability as to the correctness of the conclusion that Cheshire was operating his vehicle in a wanton manner when the accident occurred; thus, we reverse the trial court’s judgment as to the plaintiffs’ wantonness claim against Cheshire. As a result, the punitive-damages awards are set aside. Further, Rule 50(d), Ala. R. Civ. P., grants us the authority to remand a case for the trial court to determine whether a new trial should be granted in a case in which the trial court’s denial of a motion for JML is reversed. Rule 50(d), Ala. R. Civ. P. (providing that, “[i]f the appellate court reverses the judgment [denying the motion for a JML], nothing in this rule precludes it from determining that the appellee is entitled to a new trial, or from directing the trial court to determine whether a new trial shall be granted”); see also State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 319 (Ala.1999) (holding that “Rule 50(d) grants us the authority to award the appellee a new trial in a case in which we reverse the trial court’s denial of a motion for JML”). Therefore, in light of the fact that the jury returned a general verdict in favor of the plaintiffs and our reversal of the trial court’s denial of Cheshire’s and Allstate Electric’s motions for a JML concerning the plaintiffs’ claim of wantonness against Cheshire, we remand this case to the trial court to determine whether to grant a new trial on the remaining issues.
1071678 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
1071679 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.

. Section 6-1 l-27(a) provides:
"A principal, employer, or other master shall not be liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of an agent, employee, or servant of said principal, employer, or master unless the principal, employer, or master either: (i) knew or should have known of the unfitness of the agent, employee, or servant, and employed him or continued to employ him, or used his services without proper instruction with a disregard of the rights or safety of others; or (ii) authorized the wrongful conduct; or (iii) ratified the wrongful conduct; or unless the acts of the agent, servant or employee were calculated to or did benefit the principal, employer or other master, except where the plaintiff knowingly participated with the agent, servant, or employee to commit fraud or wrongful conduct with full knowledge of the import of his act.”

. Section 6-11-21(d) limits punitive damages in a personal-injury case to "three times the compensatory damages of the party claiming punitive damages or one million five hundred thousand dollars ($1,500,000), whichever is greater.”