Rel: February 17, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

———————————————

### 1210037

———————————————

**Jessica Renee Tutor**

**v.**

**Jack Sines and Devan Frazier**

**Appeal from Russell Circuit Court**
**(CV-18-900230)**

MITCHELL, Justice.

Jessica Renee Tutor was driving three passengers in her automobile when she hit another vehicle head-on. Two of the passengers,

Jack Sines and Devan Frazier, were injured and later sued Tutor in the Russell Circuit Court. The case went to trial solely on Sines's and Frazier's claims of wantonness, and the jury found in their favor. The trial court then entered judgment against Tutor. She appealed. We now affirm.

Facts and Procedural History

One clear Sunday afternoon, Tutor began driving three passengers in her car from her home in Fort Mitchell, Alabama, to Columbus, Georgia. Her passengers were Sines and Frazier ("the plaintiffs") and Brendan Caulder, who is not a party to this suit. After leaving her house, Tutor eventually turned north onto Highway 165, which had one northbound lane and two southbound lanes. The northbound and southbound lanes were separated by double lines. The northbound lane proceeded over a hill that obscured a church on the west side of the road and, at the bottom of the hill, a railroad crossing. Tutor was driving over the speed limit, despite requests from her passengers to slow down.

As she was approaching the crest of the hill, Tutor saw another northbound car in front of her, driven by Shane Argo. Sines asked Tutor to change the song playing in the car, at which point Tutor took her eyes

off the road and began to use her mobile phone, which was controlling the music. Caulder, seated behind the front passenger seat, saw that Tutor was looking down at her phone and shouted at her to slow down. She looked up and saw that she was about to rear-end Argo's car, which had slowed to a halt behind another car that was turning left into the church parking lot. Tutor turned sharply to the left and glanced the bumper of Argo's car before careening into the southbound lanes. She collided head-on with another vehicle, injuring the plaintiffs.

The plaintiffs sued Tutor for negligence and wantonness. Tutor moved for summary judgment. Citing Alabama's guest-passenger statute, § 32-1-2, Ala. Code 1975, which bars negligence but not wantonness claims in certain circumstances, the trial court granted the motion with respect to the negligence claims but denied it as to the wantonness claims.

The parties then went to trial solely on the plaintiffs' claims of wantonness. At the conclusion of the plaintiffs' case-in-chief, Tutor moved for judgment as a matter of law, and the trial court denied the motion. She again moved for judgment as a matter of law at the conclusion of all the evidence before the case was submitted to the jury,

and the trial court again denied her motion. The jury returned a verdict in favor of the plaintiffs and against Tutor, awarding Sines $500,000 and Frazier $100. Tutor then filed a renewed motion for judgment as a matter of law, arguing that the evidence was not sufficient to submit the claims to the jury. The trial court denied the motion and entered judgment against Tutor. She timely appealed.

Standard of Review

We review de novo a trial court's denial of a motion for judgment as a matter of law to determine "'"whether there was substantial evidence, when viewed in the light most favorable to the nonmoving party, to produce a factual conflict warranting jury consideration."'" Protective Life Ins. Co. v. Apex Parks Grp., LLC, 322 So. 3d 1027, 1038-39 (Ala. 2020) (citations omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989); see also § 12-21-12(d), Ala. Code 1975.

Analysis

The sole issue in this appeal is whether the plaintiffs presented substantial evidence that Tutor was driving wantonly at the time of the collision. We agree with the trial court that evidence of Tutor's wantonness was substantial, and thus the issue was properly submitted to the jury.

"'"'Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability.'"'" Ex parte Essary, 992 So. 2d 5, 9 (Ala. 2007) (citations omitted). Wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." § 6-11-20(b)(3), Ala. Code 1975. It requires "'the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'" Lands v. Ward, 349 So. 3d 219, 229 (Ala. 2021) (quoting Essary, 992 So. 2d at 9).

"Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior." Essary, 992 So. 2d at 12. But some acts are "so

inherently reckless that we might otherwise impute to [the defendant] a depravity consistent with disregard of instincts of safety and self-preservation." Id. That is, when a defendant's allegedly wanton conduct toward others would also endanger the defendant, the evidence must support finding that the defendant's wantonness extended to her own safety. Id.

The record before us contains substantial evidence from which the jury could have found that Tutor acted wantonly by (1) intentionally violating the speed limit (2) while actively engaging with her mobile phone while driving (3) with knowledge that her actions constituted a risk of probable harm to herself and her passengers. We address below the evidence that supports this finding.

A. Substantial Evidence of Speeding

In an automobile accident, "while speed alone does not amount to wantonness, speed, coupled with other circumstances, may amount to wantonness." Hicks v. Dunn, 819 So. 2d 22, 24 (Ala. 2001). In Hicks, this Court found substantial evidence of wantonness on facts similar to those here. Id. Dunn, the defendant in Hicks, had crested a hill while driving and saw the Hickses' vehicle stopped and waiting to turn into a

restaurant 100 feet or less in front of him.  Id. at 23.  Dunn applied his brakes, but, he testified, when he saw the Hickses' vehicle, it was too late to stop.  Id.  His truck struck the Hickses' vehicle, injuring them.  Id.  The Hickses sued, and the trial court entered judgment as a matter of law on their wantonness claim.

The Hicks Court found that several pieces of evidence entitled the jury to find that Dunn had acted wantonly.  Id. at 25.  First, Dunn was traveling at a speed somewhere between the speed limit of 40 and 65 miles per hour.  Id. at 23.  Second, Dunn testified that he did not notice the functioning blinker and brake lights on the Hickses' vehicle.  Id.  Third, construction signs were posted along the road leading up to the restaurant, and there was evidence that the road was in a "residential-type area."  Id.  Finally, Dunn knew that the restaurant was there and that it was a popular place for lunch.  Id.  From this evidence, the Court reasoned that "the jury could have found that Dunn was driving much faster than the posted speed limit and that he was not paying attention to the road."  Id. at 25.  The evidence likewise would have supported a finding that "he did not slow his speed despite the construction signs and his knowledge that a restaurant into which patrons would likely be

turning was on the other side of the hill he was cresting, obscured from his view." Id. This Court concluded that "[t]hese facts could have supported a verdict that Dunn had acted with a 'reckless or conscious disregard of the rights or safety of others,'" and thus reversed the trial court's decision entering judgment as a matter of law. Id.

As in Hicks, the record here contains substantial evidence that Tutor was driving faster than the speed limit. Four witnesses testified that Tutor was driving in excess of the speed limit, and there was no evidence to the contrary; the witnesses disagreed only over the extent of her speeding. Tutor testified that she was driving three miles per hour over the speed limit. Caulder testified in his deposition, which was read into evidence, that Tutor was driving 10 to 15 miles per hour over the speed limit based on his view of the speedometer at the time. Frazier, who was seated directly behind Tutor, estimated that she was speeding by around five miles per hour, based not on his view of the speedometer but on his felt sense of her speed. Finally, Argo testified that she was driving at least 10 miles per hour over the limit. The jury could have reasonably found Caulder's testimony to be the most credible because, other than Tutor's, it was the only eyewitness testimony about the

speedometer, and the jury would have been justified in discounting Tutor's testimony as self-serving. The jury could have thus reasonably concluded that Tutor was speeding by as much as 15 miles per hour.

Tutor argues that Argo's and Caulder's testimony about her speed is "speculative and may not serve as substantial evidence." Tutor's brief at 55. She asks this Court to discount their testimony entirely, stating that it "may not be relied upon in support of any claim of wanton conduct." Id. at 57. According to Tutor, Argo's testimony was not substantial evidence of her speed because he acknowledged that his estimate was solely "based on the impact he felt," even though he "had never been involved in an automobile collision before." Id. And, she argues, because Frazier stated in his deposition that Caulder was "possibly" on drugs -- which Frazier admitted he said only because he "didn't know [Caulder] very well" -- Caulder's testimony was too speculative to be substantial. Id. at 20, 57. Thus, Tutor concludes, Argo's and Caulder's testimony as to speed should be disregarded.

To bolster her argument, Tutor cites this Court's decision in Tolbert v. Tolbert, 903 So. 3d 103 (Ala. 2004). Tolbert involved a wantonness claim that arose after the defendant driver lost control of her car on a

rain-slicked "S" curve and slid into oncoming traffic. Id. at 105. A witness testified that the defendant was "probably going 60 miles per hour" when her car skidded into view, id. at 118, but he "could not say whether [the defendant's] car was already 'skidding when it came around through there so fast.'" Id. at 117. Rather, he "knew that 'generally when a car goes into a skid it speeds up.'" Id. at 117-18. This Court held that "[t]hese qualified opinions" -- which were the only evidence offered as to the defendant's speed -- "would not constitute substantial evidence that [the defendant] was in fact exceeding the speed limit immediately before she lost control of her vehicle and went into a spin." Id. at 118.

Tutor's reliance on Tolbert is misplaced. Unlike the witness's testimony in Tolbert, which did not address whether the defendant was speeding while she was in control of the vehicle, Argo's and Tutor's testimony clearly indicated that Tutor was speeding while she was in control. In characterizing witness testimony as insubstantial merely because she believes the witness is not credible, Tutor confuses the roles of judge and jury -- at a jury trial, the witness's credibility is precisely the kind of question the jury must resolve. Therefore, the trial court did not

err in allowing evidence of Tutor's speed -- including the testimony of Argo and Caulder -- to be put before the jury.

### B. Substantial Evidence of Active Phone Use

Substantial evidence also supports a finding that, while speeding, Tutor consciously took her eyes from the road to actively engage with her mobile phone. Caulder testified that Tutor was looking down at her phone as she was cresting the hill at the time of impact. Frazier likewise testified that Tutor was holding and looking down at her phone at the time of the collision. Tutor stated that, as she was approaching the crest of the hill, she saw that she was driving behind a car, took her eyes off the road to look down to pause a song on her phone, hit a button on the radio, then looked up to find that the car in front of her had stopped or was stopping. Tutor said that she moved the phone from her lap to her cupholder at some point "a few seconds before the wreck." But she also conceded that she was looking at her phone "right before impact."

Tutor argues that she is due judgment as a matter of law because it is not wanton to be "momentarily distracted while travelling above the posted speed limit." Tutor's brief at 47. She says that the distraction caused by using her phone could also have arisen from "simply pushing

a button to change a radio station, looking down in a cupholder to pick up a drink, looking at a billboard on the side of the road, taking one's eyes off the road to look at a passenger while speaking to them or a host of other acts." Id. Tutor correctly notes that this Court has declined to find substantial evidence of wantonness merely on the ground of distracted driving. See, e.g., George v. Champion Ins. Co., 591 So. 2d 852 (Ala. 1991) (holding that a driver was not wanton for glancing back in conversation).

But evidence of distracted driving can be evidence of wantonness when the distraction results from "'the conscious doing of some act or the omission of some duty.'" Lands, 349 So. 3d at 229 (quoting Essary, 992 So. 2d at 9). For that reason, active phone use like texting, browsing the Internet, or engaging with a music app is qualitatively different from distractions that are not the result of a conscious act or that arise from an inadvertent reaction to some external event or stimulus. Here, Tutor testified that she "made the decision" to pick up and engage with her phone to change the song. She, Caulder, and Frazier all testified that she was still using her phone at the time of impact. It is thus reasonable to conclude that her active phone use was not a mere distraction resulting from inadvertence, but the result of a conscious choice.

C. Substantial Evidence of Knowledge of Dangerous Circumstances

The record supports finding that, when Tutor decided to continue speeding and to look down to use her mobile phone, she knew that the conditions were dangerous to herself and her passengers. We have repeatedly said that "'"the actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence."'" Hicks, 819 So. 2d at 24 (citations omitted). To this end, Caulder testified that Tutor's passengers had twice admonished her for her speed, but that she did not slow down. And Frazier testified that he heard Caulder shout at Tutor to slow down moments before the impact. Like the notice created by the construction signs in Hicks, these warnings support the inference that she was on notice that her speed was excessive and dangerous.

Even beyond the passengers' warnings, however, the evidence shows that Tutor knew of other dangerous conditions that warranted caution. Tutor was driving in the lone northbound lane, which was divided from the two southbound lanes by a double line. She acknowledged that she knew there was a car in front of her as she crested the hill, the summit of which constituted a blind spot and concealed the

13

state of traffic on the other side. For the six months preceding the crash, she lived less than two miles away from the hill. She testified that she drove on the road enough to be "somewhat familiar" with it and to know there was a building and a railroad crossing on the far side of the hill. While she did not take this route daily, she testified that she took the road whenever she would visit her family in Columbus.

Other evidence reinforces that Tutor engaged in conduct that she knew was dangerous under the circumstances. She testified that she knew at the time of the wreck that it was dangerous to violate the speed limit, particularly when there was traffic congestion, and that it was a risk to her own and her passengers' safety to fail to adjust her speed when approaching a railroad crossing. She further admitted that she knew at the time of the wreck that distracted driving can cause accidents resulting in injuries to others and serious bodily harm. She also knew at that time that looking at a mobile phone while driving is dangerous and likely to cause dangerous accidents. Accordingly, the jury could have reasonably concluded that Tutor knew that her speed was dangerous under the circumstances but chose not to slow down, then further chose

to take her eyes off the road to use her phone with knowledge of the additional danger it would pose.

## Conclusion

From this evidence, reasonable and fair-minded persons in the exercise of impartial judgment could reasonably infer that Tutor acted recklessly or with conscious disregard of the rights or safety of others. Cf. §§ 6-11-20, 12-21-12. It was therefore proper for the jury to consider whether speeding, accompanied by active mobile phone use and knowledge of dangerous circumstances, was sufficient to impute a culpable state of mind to Tutor. The trial court did not err in submitting the evidence to the jury, and it rightly denied Tutor's motion for judgment as a matter of law. We affirm the judgment.

AFFIRMED.

Parker, C.J., and Shaw, Wise, Bryan, Stewart, and Cook, JJ., concur.

Sellers and Mendheim, JJ., concur in the result.