This case arose out of an incident at the Birmingham city jail. On June 10, 1993, Edward H. Moore was arrested and was charged with driving under the influence; he was taken to the city jail, where his blood alcohol level was tested. There, Moore had two seizures that resulted in injury to him.[1] Moore filed a complaint against the City of Birmingham ("the City"), claiming damages for personal injury resulting from an alleged failure to provide adequate medical attention and alleging negligence, willful and wanton misconduct, and a liability under 42 U.S.C. § 1983. The case proceeded to trial on the negligence count alone; the jury awarded Moore $150,000. The City appeals. We affirm.
Before trial, the City filed a motion in limine asking the court to instruct Moore to refrain from referring to or commenting on the city jail's guidelines for the diagnosing and treating a seizure; these guidelines may or may not have been in effect at the time of the alleged failure to provide adequate medical attention to Moore. The trial court denied this motion, and the guidelines were admitted into evidence at trial.
The City raises two issues on appeal: 1) Whether it was error for the trial court to admit into evidence the guidelines for diagnosing and treating a seizure, and 2) whether the verdict was against the great weight of the evidence. The City first argues that it was error to admit the guidelines because, it says, the evidence indicated that they were not in effect when Moore had his seizures at the jail. There was evidence, however, that the guidelines were in effect when Moore had the seizures. The guidelines state:
 "C. If a prisoner is exhibiting continuous seizures they shall be sent to Cooper Green Emergency Room. If the person stabilizes from seizure give 1 capsule of Dilantin 100 mg. or Dilantin with Phenobarbital."
The court did not abuse its discretion in admitting the guidelines, because the evidence was disputed as to whether they were in effect at the time of Moore's seizures.
Even if the court erred in admitting the guidelines, the mere showing of error is not sufficient to warrant a reversal; it *Page 974 
must appear that the appellant was prejudiced by that error. Rule 45, A.R.App.P. Industrial Risk Insurers v. Garlock Equip.Co., 576 So.2d 652, 658 (Ala. 1991); Preferred Risk Mut. Ins.Co. v. Ryan, 589 So.2d 165, 167 (Ala. 1991).
The City argues that the testimony of the jail physician, the nurses, and the jail administrator, to the effect that the guidelines were not applicable when Moore was admitted, shows that it was error to admit the guidelines themselves. However, the fact that that testimony was presented to negate the effect of admitting the guidelines leads us to the conclusion that if there was any error in the admission of the guidelines, that error was harmless.
The decision to admit or to exclude evidence is within the discretion of the trial judge, and we will not reverse such a decision absent an abuse of discretion. See Eason v. Comfort,561 So.2d 1068, 1072 (Ala. 1990). We find no abuse of discretion in the record before us.
The second issue is whether the jury verdict was against the great weight of the evidence.
 "A strong presumption of correctness attaches to a jury verdict in Alabama. Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990). This presumption of correctness is strengthened by a trial court's denial of a motion for new trial. Id. This Court will not disturb a trial court's denial of a motion for new trial when evidence has been presented that, if believed, would support the jury's verdict."
Fidelity Guar. Ins. Co. v. Sturdivant, 622 So.2d 1279, 1280
(Ala. 1993). Moore's action was based on simple negligence. Although there was conflicting testimony regarding whether the medical attention provided Moore was reasonably adequate, there was evidence from which a jury could infer that it was not. The evidence reflects that, after his first seizure, a nurse from the jail attended Moore and moved him to the cell block where sick prisoners are kept. The nurse did not give him any medication; she left him by himself, but asked a corrections officer to keep him under observation. The corrections officer watched Moore, but was called away for a minute or two. When he returned he found Moore on the floor having another seizure; his head was bleeding. The officer called the nurse and she responded immediately.
Ned Whitehead II, a physician's assistant and manager of the clinic at the Jefferson County jail, testified that at the county jail he works under standing orders from the jail physician, Dr. Robertson — the same physician as at the city jail. However, Mr. Whitehead testified that at the county jail the standard procedure for dealing with seizure patients is to give them 400 milligrams of Dilantin and to hold them in the clinic. Cynthia Henderson Jolley, a nurse practitioner who worked in the Marshall County jail and who had the authority to prescribe medication, testified that her experience indicated that the proper procedure for treating a seizure patient is to protect the patient to be sure that injury does not occur and to medicate the patient with Valium or Dilantin. Nurse Jolley also testified that she would stay with the patient and call for an ambulance for the purpose of transporting the patient to a hospital. Nurse Jolley further testified that her experience indicated it is not good practice to fail to medicate a seizure patient and to leave the patient unattended, because there is a chance that the patient will have another seizure. Thus, the record contains competent evidence that, if believed, would support a jury verdict for Moore on his negligence claim.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and INGRAM, JJ., concur.
[1] Moore had regularly suffered seizures as a result of a gunshot wound to the head years before this incident, but he was able to function normally. After the fall resulting from his second seizure at the jail, Moore suffered a large hematoma in the left temporal lobe of his brain. Richard Beacon Morawetz, M.D., operated on Moore; he testified that he expects Moore to have problems with speech and understanding, problems with his sight, and a severe limitation or complete lack of ability to read or write. *Page 975