PARKER, Justice.
In case no. 1110439, the Town of Gurley (“the Town”) appeals the trial court’s judgment in favor of M & N Materials, Inc. (“M & N”), on M & N’s inverse-condemnation claim against the Town. We reverse the trial court’s judgment and render a judgment for the Town. In case no. 1110507, M & N cross-appeals the trial court’s judgment in favor of the Town and Stan Simpson on other claims. We affirm.

I. Facts and Procedural History

This is not the first time these parties have been before this Court. In Ex parte Simpson, 36 So.3d 15 (Ala.2009) (“Simpson I ”), this Court considered petitions for the writ of mandamus filed by the parties based on the same facts that create the basis for the present appeals. We set forth the following pertinent facts in Simpson I:
“M & N was formed in 2003. At that time, M & N acquired 160 acres of mountain property to be used as a rock quarry in an unincorporated area of Madison County. By June 2004, it had purchased approximately 109 additional acres in the unincorporated area for use in connection with the quarry. For convenience, we will refer to the 269 acres as ‘the property.’ The property was located approximately one mile from the residence of Stan Simpson.
“In July 2003, more than a year before his election as mayor of the Town, Simpson became the chairperson of a group of residents of the Town known as the Citizens for a Better Gurley (‘the CBG’). Between July 2003 and November 23, 2004, the CBG actively opposed the operation of a rock quarry on the M & N property. On July 17, 2003, the Town council adopted Resolution no. 216, which stated, in pertinent part:
“ WHEREAS, the Town Council of the Town of Gurley has obtained information from the Alabama Department of Environmental Management that a corporation by the name of M & N, Incorporated, has applied for a permit to operate a rock quarry near the corporate limits of the Town of Gurley, and
“WHEREAS, the Town Council has serious concerns regarding the effects such a rock quarry would have on (1) air quality, (2) damage from blasting to homes and businesses, (3) large volumes of traffic on Gurley Pike (the main service road for Madison County Elementary School), (4) damage to existing streets by heavy trucks and (5) damage to the Town’s water storage tank located on Gurley Pike,
“‘NOW, THEREFORE, be it resolved that the Town of Gurley opposes the location of a rock quarry near the corporate limits of the Town.’
“Simpson spoke often at Town council meetings in opposition to the quarry. Also, the CBG contacted State Senator Lowell Barron and State Representative Albert Hall to enlist their aid in opposing the quarry. Simpson and Representative Hall collaborated on House Bill 170, a bill that Representative Hall introduced in the Alabama Legislature during the 2004 legislative session. The bill, which became law on February 26, 2004, see Act No. 2004-19, Ala. Acts 2004, authorized the Town to annex M & N’s property on the basis of a majority vote of the Town’s residents in a special annexation referendum. According to Simpson, the purpose of the annexation was to give the Town control over the use of the property. The referendum *5 was conducted on April 13, 2004, and the annexation proposal passed by 191 votes to 23 votes.
“On April 21, 2004, M & N applied to the Town for a business license. The application was denied. On May 4, 2004, the Town imposed ‘an immediate moratorium on the acceptance of applications for use permits, building permits, right-of-way permits, zoning classification, variances, special exceptions or business licenses relating to’ the property.[1]
“In approximately April 2004, Simpson began a campaign for the office of mayor of Gurley. During his campaign, he pledged to ‘fight against the rock quarry.’ He was elected on August 24, 2004, and assumed the duties of the office on October 4, 2004, serving as, among other things, a voting member of the Town council.
“Meanwhile, on July 12, 2004, M & N entered into an agreement with Vulcan Lands, Inc. (“Vulcan Lands’), whereby Vulcan Lands acquired an option to purchase the property for $3.75 million. The option was to expire on November 15, 2004. Vulcan Lands failed to exercise its option, according to M & N, because of M & N’s failure to acquire a business license from the Town. Nevertheless, on November 23, 2004, M & N sold the property to Vulcan Lands.
“On that day, M & N executed two documents relating to the disposition of the property. One document was a general warranty deed by which M & N sold the property to Vulcan Lands for an undisclosed amount. In an interrogatory answer, M & N stated: “Vulcan backed out [of the option price] because of no City of Gurley [business] license. This reason [is the] sole reason [that was] quoted from ... Vulcan ... as to why Vulcan would not close.’ The warranty deed contained no reservations of rights or ownership.
“That same day, M & N entered into a royalty agreement (‘the agreement’) with ‘Vulcan Construction Materials LP, a Delaware Limited Partnership, by and through its Southern & Gulf Coast Division’ (“Vulcan Materials’). The agreement provided, in pertinent part:
“ ‘WHEREAS, contemporaneously with the execution and delivery of this Agreement, Vulcan [Materials] (or its affiliates) and [M & N] are executing other agreements whereby, among other understandings, [Vulcan Lands] will acquire title to approximately 269 acres of real property near [the Town] in Madison County, Alabama, heretofore owned by [M & N] (“the Property”);
“ “WHEREAS, Vulcan [Materials] is engaged in the business of mining, crushing, producing, distributing, transporting, and marketing of crushed stone products used in the construction industry (“Quarrying Operations”);
“ ‘WHEREAS, Vulcan [Materials] intends to enter into a lease arrangement with Vulcan [Lands] that will allow Vulcan [Materials] to conduct Quarrying Operations on the Property; and
“ “WHEREAS, the parties desire to set forth their understanding concerning payment of royalties to [M & N] and other terms related to the sale by *6 Vulcan [Materials] of crushed stone construction aggregates (“Stone”) recovered from the Property.
“ ‘NOW, THEREFORE, for and in consideration of the mutual execution of this Agreement and the covenants and conditions contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do agree as follows.... ’
“(Emphasis added.)
“Under the agreement, Vulcan Materials was to pay M&N ‘earned royalties,’ which were ‘equivalent to 5% of the Average Annual Sales Price ... of Stone quarried, sold and removed from the Property (the “Earned Royalty(ies)”) during each Contract Year of the Term.’ The agreement provided for a ‘minimum royalty payment’ in the following terms:
“ ‘If the total of all Earned Royalties payable by Vulcan [Materials] by the end of a Contract Year is less than Fifty Thousand Dollars ($50,000) (the “Minimum”), Vulcan [Materials] shall pay [M & N] an additional royalty payment equivalent to the difference between the Earned Royalties with respect to that Contract year and $50,000, which amount is hereinafter referenced as the “Earned Royalty Shortfall.” ’
“According to M & N, the consideration for the sale of the property was actually $1 million, plus the royalty payments and obligations due under the agreement.
“The agreement also stated that Vulcan Materials had ‘no obligation to mine’:
“ ‘[M & N] acknowledges that Vulcan [Materials] shall have the right, but not the obligation, to conduct Quarrying Operations on the Property ... during the Term, it being agreed that the payment of the Earned Royalty Shortfall ... and consideration paid by Vulcan [Materials] at the time of conveyance of the Property is made in lieu of any such obligation.’
“(Emphasis added.)
“Finally, the agreement provided that Vulcan Materials would be ‘relieved from the obligation to make any payments to [M & N]’ if prevented ‘by operation of law’ from ‘conducting Quarrying Operations on the Property.’ In particular, it stated: ‘Vulcan [Materials’] obligations to perform ... shall be suspended during the period it is so prevented from conducting Quarrying Operations. Vulcan [Materials ], in its sole discretion, shall determine what action (if any) shall be undertaken to litigate, oppose or otherwise challenge an event constituting Operation of Law.’ (Emphasis added.) ‘Operation of law[5] included condemnation, the exercise of the right of eminent domain, and zoning or such other land-use restrictions. In that connection, the agreement further provided:
“ ‘In the event of a Taking of the Property ..., [M & N] hereby assigns to Vulcan [Materials] its claim, interest, or right (if any) in any award that may be made in such proceeding. Further, [M & N] agrees that Vulcan [Materials] shall have the sole right and obligation to seek compensation and retain damages caused by the Taking.’
“(Emphasis added.)
“On January 18, 2005, Vulcan Materials applied to the Town for a license to operate the business of ‘Quarrying and Processing Construction Aggregates’ on the property. That same night, the Town council adopted Ordinance no. 2004-284, which designated the property as an agricultural zone. Simpson, as *7 mayor, subsequently sent Vulcan Materials a letter denying the application, stating, in pertinent part: ‘ “Quarrying and Processing Construction Aggregates” is not a use permitted under the Agricultural [zoning] classification now applicable to the property in question.’ Simpson admits that he was directly involved in the decision to deny the license application of Vulcan Materials. As a consequence of the denial of permission to operate the rock quarry, Vulcan Materials has paid M & N no royalties.
“Subsequently, M & N sued the Town and Simpson. Also named as defendants in M & N’s complaint were (1) Vulcan Lands, (2) Vulcan Materials, and (3) Vulcan Materials Company (hereinafter referred to collectively as ‘the Vulcan entities’). The complaint alleged that at all times relevant to the claims against him ‘Simpson was acting in his individual capacity and/or his representative capacity on behalf of the Town.’ The claims against Simpson included interference with business or contractual relations and negligence and/or wantonness and sought declaratory and/or in-junctive relief. The claims against the Town included inverse condemnation[2] and negligence[3] and also sought declaratory and/or injunctive relief.
“The Vulcan entities were named ‘by virtue of the provisions of Ala. Code § 6-6-227 (1975), which requires that all persons shall be made parties who have or claim any interest which would be affected by the declaration.’ The Vulcan entities have filed a ‘motion to be excused from participation at trial.’ In that motion, they agree[d] to be bound by any judgment entered with regard to [M & N’s] declaratory judgment claim.’
“Simpson and the Town each moved for a summary judgment. Simpson argued, among other things, that he was entitled to absolute immunity for any actions he took relating to the property, either before or after he became mayor. The Town challenged M & N’s standing to bring the action. The Town also adopted Simpson’s summary-judgment motion and brief in support of the motion. In opposition to the motions, M & N presented, among other things, evidence indicating that Simpson had, many years ago, pleaded guilty to two misdemeanor criminal charges in Tennessee. On April 16, 2009, the trial court denied the motions.
“Simpson filed his petition on May 8, 2009, in case no. 1080981; the Town filed its petition on May 11, 2009, in case no. 1081027. Both petitions challenge M & N’s standing to prosecute the underly *8 ing action. Also, the Town’s petition asserts the defense of absolute immunity against the claim based on Simpson’s alleged negligence. Similarly, Simpson’s petition asserts the defense of absolute immunity against the claims alleging against him interference with business or contractual relations and negligence and/or wantonness. Each petition seeks a writ of mandamus (1) directing the trial court to vacate its order of April 16, 2009, denying Simpson’s and the Town’s summary-judgment motions, and (2) ordering it to enter a judgment in favor of the movant.”
Simpson I, 36 So.3d at 19-22.
We concluded in Simpson I that M & N had standing to sue the Town and Simpson based on events that had occurred both before and after the sale of the 269 acres owned by M & N (“the property”) to Vulcan Lands. In determining that M & N had standing to sue the Town and Simpson based on pre-sale and post-sale events, we also noted that M & N may not be the real party in interest pursuant to Rule 17, Ala. R. Civ. P.[4] However, we refused to make a determination on that issue because neither the Town nor Simpson had raised that argument. Simpson I, 36 So.3d at 25.
Concerning the issue of immunity, we concluded that “the Noerr-Pennington doctrine [5] affords Simpson absolute immunity for his pre-election conduct opposing the rock quarry. Also, Simpson is entitled to absolute legislative immunity for his post-election participation in the passage of zoning Ordinance no. 2004-284. As to these immunity bases for the entry of a summary judgment, the petitions of Simpson and the Town are granted and writs are issued.
“Simpson is not, however, entitled to legislative immunity for his role in denying Vulcan Materials’ application for a business license. To [the] extent the petitions of Simpson and the Town assert legislative immunity as the basis for the entry of a summary judgment against M & N on its claim arising out of the denial of Vulcan Materials’ license application, the petitions are denied.”
Simpson I, 36 So.3d at 31.
Following Simpson I, the Town and Simpson sought to amend their answers to assert the affirmative defense that M & N was not the real party in interest under Rule 17. M & N filed a motion to strike the Town’s and Simpson’s amended answers; M & N argued that the Town and Simpson had waived the affirmative defense of real party in interest based on the fact that the case had been pending for *9 over four years before the Town and Simpson sought to raise the defense. On February 3, 2010, following a hearing, the trial court granted the Town’s and Simpson’s motions for leave to amend then-answers; the trial court entered its judgment “[a]fter review of [Simpson I], a review of all relevant and applicable law, the file and the record in its entirety, and having considered the arguments and representations made by counsel.”
The case proceeded to a jury trial beginning on February 14, 2011. The Town and Simpson filed motions for a judgment as a matter of law (“JML”) pursuant to Rule 50, Ala. R. Civ. P., at the close of M & N’s evidence. The Town argued, among other things, that Art. I, § 23, Ala. Const.1901, did not apply and that M & N could not maintain its inverse-condemnation claim based on the administrative and regulatory actions taken by the Town because such a regulatory “takings” claim is unsustainable under § 235, Ala. Const.1901. The Town and Simpson renewed their motions for a JML at the close of all the evidence. The trial court granted the Town’s renewed motion for a JML in part and Simpson’s motion for a JML in part; the trial court submitted to the jury M & N’s inverse-condemnation claim based upon § 235, Ala. Const.1901, against the Town and M & N’s wrongful-interference-with-contractual-or-business-relations claim against Simpson. Before the matter was submitted to the jury, however, the parties and the trial court discussed whether M & N’s inverse-condemnation claim was maintainable under § 235. The Town’s counsel entered the following objection:
“And the Town of Gurley objects to any jury charges relating to inverse condemnation, the recovery, the damages, any jury charge related to inverse condemnation. Because, as the Court correctly states, we don’t think that [§] 235 or the State of Alabama — law of Alabama recognizes a regulatory taking, which is what [M & N] has contended that they are making in this case.
“Any regulatory taking is called for under the U.S. Constitution, [but M & N has] dismissed any claims related to the Fifth Amendment and Fourteenth Amendment of the U.S. Constitution.
“There has been no physical taking or injury to the property as defined under Alabama law that would allow an inverse condemnation claim to go to the jury.”
The Town also reasserted its objection to the trial court’s inverse-condemnation jury charge after the jury had been charged.
On February 22, 2011, the jury returned a verdict in favor of M & N and against the Town on M & N’s inverse-condemnation claim; the jury awarded M & N damages in the amount of $2,750,000, plus 6% interest. The jury also returned a verdict in favor of Simpson and against M & N on M & N’s claim of wrongful interference with contractual or business relations against Simpson.
On August 5, 2011, the trial court entered a judgment on the jury’s verdict; the trial court amended its judgment on August 11, 2011. The trial court’s amended judgment provides, in pertinent part:
“On February 14, 2011, the trial of the afore-referenced • cause commenced. Prior to the commencement of said trial, the parties consented to permit this Court to hear and decide the issue of litigation expenses due to [M & N] in the event [M & N] prevailed on its inverse condemnation claim. On February 22, 2011, the jury found in [M & N’s] favor on the inverse condemnation claim and assessed damages against the [Town] in the amount of $2,750,000.00, plus 6% interest.
“Subsequent thereto, a hearing was held on [M & N’s] claim for litigation *10 expenses. Having carefully reviewed all briefs, supplements thereto and all case-law cited by the parties, relevant or otherwise, this Court hereby awards [M & N] litigation expenses in the amount of $1,200,169.20 (consisting of $1,158,969.00 for attorneys’ fees and $41,200.26 [sic] for expenses).
[[Image here]]
“Therefore, it is ORDERED, ADJUDGED and DECREED by the Court as follows:
“1. The verdict of the jury having been made in open court, judgment be and is hereby entered in favor of the plaintiff, M & N Materials, Inc., and against the defendant, The Town of Gur-ley, Alabama, in the amount of $2,750,000.00, plus 6% interest beginning April 14, 2005, in the amount of $966,493.15 totaling $3,716,493.15 and the court costs associated with these proceedings, for which execution may issue.
“2. The plaintiff, M & N Materials, Inc., is hereby awarded litigation expenses in the amount of $1,200,169.20, for which execution may issue.
“3. The verdict of the jury having been made in open court, judgment be and is hereby entered in favor of the defendant, Mayor Stan Simpson, as to all claims against him.
“4. The claims for declaratory relief are hereby dismissed without prejudice in view of the verdict.”
(Capitalization in original.) The trial court did not rule on M & N’s request for injunc-tive relief.
On August 19, 2011, the Town filed a renewed motion for a JML pursuant to Rule 50(b), Ala. R. Civ. P. In that same motion, the Town requested alternative postjudgment relief pursuant to Rule 59(e), Ala. R. Civ. P. On November 17, 2011, pursuant to Rule 59.1, Ala. R. Civ. P., the parties consented to extend the 90-day period for ruling on the Town’s post-judgment motion, and the trial court entered an order retaining jurisdiction to rule on the Town’s postjudgment motion until December 19, 2011. On December 13, 2011, the trial court denied the Town’s postjudgment motion. The Town appealed. On January 24, 2012, M & N filed a cross-appeal, naming the Town and Simpson as appellees.
On February 13, 2012, upon motion of the parties, this Court entered an order in both the appeal and the cross-appeal stating that the trial court’s order appealed from was not a final judgment in that it failed to dispose of the claim for injunctive relief. As a result, we remanded the case to the trial court for it “to enter a ruling on the claim for injunctive relief.” On February 15, 2012, the trial court entered an order, as follows:
“On February 13, 2012, the Supreme Court of Alabama remanded this matter to allow this Court an opportunity to dispose of M & N Materials, Inc.’s (‘M & N’) claim for injunctive relief or otherwise make the judgment on the jury’s verdict final. A hearing on this matter was held on February 15, 2012. It is hereby ORDERED, ADJUDGED and DECREED by the Court that in light of the jury’s verdict, M & N’s claims for injunctive relief are hereby dismissed without prejudice. In light of the dismissal of the declaratory and injunctive relief, it is further ordered that Vulcan Materials Company, Vulcan Construction Materials, L.P., and Vulcan Lands, Inc. are hereby dismissed without prejudice as parties to this action.”
(Capitalization in original.)

II. Standard of Review

Different standards of review apply in our determination of the claims before *11 us. In addressing the Town’s appeal, which challenges the trial court’s denial of its motion for a JML on the inverse-condemnation claim, we apply the following standard of review:
“In American National Fire Insurance Co. v. Hughes, 624 So.2d 1362 (Ala.1993), this Court set out the standard that applies to the appellate review of a trial court’s ruling on a motion for a JML:
“ ‘The standard of review applicable to a ruling on a motion for JNOY [now referred to as a renewed motion for a JML] is identical to the standard used by the trial court in granting or denying a motion for directed verdict [now referred to as a motion for a JML]. Thus, in reviewing the trial court’s ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.’
“624 So.2d at 1366 (citations omitted). Further, in Cessna Aircraft Co. v. Trzcinski, 682 So.2d 17 (Ala.1996), this Court held:
“ ‘The motion for a J.N.O.V. [now referred to as a renewed motion for a JML] is a procedural device used to challenge the sufficiency of the evidence to support the jury’s verdict. See, Rule 50(b), [Ala.] R. Civ. P.; Luker v. City of Brantley, 520 So.2d 517 (Ala.1987). Ordinarily, the denial of a directed verdict [now referred to as a JML] or a J.N.O.V. is proper where the nonmoving party has produced substantial evidence to support each element of his claim. However, if punitive damages are at issue in a motion for a directed verdict or a J.N.O.V., then the “clear and convincing” standard applies. Senn v. Alabama Gas Corp., 619 So.2d 1320 (Ala.1993).’
“682 So.2d at 19 (footnote omitted). ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989). See § 12-21-12(d), Ala.Code 1975.”
Cheshire v. Putman, 54 So.3d 336, 340 (Ala.2010).
In its cross-appeal, M & N argues that the trial court erred by granting the Town’s and Simpson’s motions for a JML as to certain claims and by granting the Town’s motion to dismiss certain of M & N’s claims against it, see supra note 3. Concerning M & N’s arguments that the trial court erred by granting the Town’s and Simpson’s motions for a JML, we apply the standard of review set forth above. Concerning M & N’s argument that the trial court’s judgment granting in part the Town’s motion to dismiss, we apply the following standard of review:
“ ‘On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.], is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.’ ”
*12 C.B. v. Bobo, 659 So.2d 98, 104 (Ala.1995) (quoting Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)).

III. Discussion

A. Case No. 1110m

First, the Town argues that M & N’s inverse-condemnation claim, based upon administrative and/or regulatory actions taken by the Town, is not maintainable under § 235, Ala. Const.1901, because, it says, Alabama does not recognize as com-pensable a regulatory “taking.” M & N does not dispute that its inverse-condemnation claim is based upon the Town’s administrative and/or regulatory actions and argues that its claim is maintainable under § 235.
Section 235, entitled “Taking of property for public use by municipal and other corporations,” provides, in pertinent part:
“Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction.”
The parties have not directed this Court’s attention to any precedent in which an inverse-condemnation claim based upon a regulatory “taking” by a municipal corporation was brought invoking § 235. The Town argues that, under the plain language of § 235 — that the property must be “taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements ...” (emphasis added) — an inverse-condemnation claim based upon a municipal corporation’s regulatory “taking” of property is not sustainable. The Town argues that under § 235 there are essentially two requirements that must be met in order to maintain an inverse-condemnation claim: The party alleging that its property has been taken pursuant to inverse condemnation must prove, first, that the property has been “taken, injured, or destroyed” and, second, that the property has been physically disturbed.
The Town directs our attention to Thompson v. City of Mobile, 240 Ala. 523, 199 So. 862 (1941), among other authorities, in support of its argument that an actual physical disturbance or invasion of the property must occur in order to support an inverse-condemnation claim under § 235. This Court stated in Thompson:
“In our recent case of Alabama Power Company v. City of Guntersville, 235 Ala. 136, 177 So. 332, 339, 114 A.L.R. 181 [ (1937) ], after a full review of many authorities as to what constituted a taking, injuring or destroying of property within the meaning of the constitutional provisions which require that just compensation shall be first made to the owner for such taking, injuring or destroying, we adopted the following rule of liability, viz: ‘That just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of “its” works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in excess of that sustained by the general public.’ ”
*13 240 Ala. at 527, 199 So. at 865 (final emphasis added). See also Jefferson Cnty. v. Southern Natural Gas Co., 621 So.2d 1282, 1286-87 (Ala.1993) (holding that a jury-may resolve a § 235 claim only “where there is evidence of some direct physical injury to the property”); City of Tuscaloosa v. Patterson, 534 So.2d 283, 285-86 (Ala.1988) (noting that, in a claim brought pursuant to § 235, there must be proof that a government project “causes a direct physical disturbance of a right, either public or private, that the property owner enjoys in connection with his property”); and Alabama Power Co. v. City of Guntersville, 235 Ala. 136,143,177 So. 332, 339 (1937) (“We think the proper rule ... is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of ‘its’ works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property....”).
We find the Town’s argument persuasive. As this Court stated in Jefferson County v. Weissman, 69 So.3d 827, 834 (Ala.2011): “We are cognizant that the long-settled and fundamental rule binding this Court in construing provisions of the constitution is adherence to the plain meaning of the text.” Within the plain meaning of its text, § 235 does not make compensable regulatory “takings” by an entity or person vested with the privilege of taking property for public use. As set forth in our long-standing precedent, the taking, injury, or destruction of property must be through a physical invasion or disturbance of the property, specifically “by the construction or enlargement of [a municipal or other corporations’] works, highways, or improvements,” not merely through administrative or regulatory acts.
M & N encourages us to look to federal caselaw concerning regulatory “takings” under the final clause of the Fifth Amendment to the United States Constitution, often referred to as the “Just Compensation Clause,” in interpreting § 235. However, the language used in the Just Compensation Clause is not similar to the language in § 235. The Just Compensation Clause provides that “private property [shall not] be taken for public use without just compensation.” Therefore, the precedent interpreting the Just Compensation Clause does not aid our interpretation of the substantially different § 235.
We also note that M & N could have asserted its inverse-condemnation claim, which is based upon the administrative and regulatory actions of the Town, pursuant to the Just Compensation Clause. See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg’l Planning Agency, 535 U.S. 302, 306 n. 1,122 S.Ct. 1465,152 L.Ed.2d 517 (2002) (“[The Just Compensation Clause] applies to the States as well as the Federal Government. Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 239 [17 S.Ct. 581, 41 L.Ed. 979] (1897); Webb’s Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 [101 S.Ct. 446, 66 L.Ed.2d 358] (1980).”). M & N initially asserted its claim as a federal constitutional claim, but it later voluntarily dismissed that claim in order to keep this case in the state trial court. M & N, as master of its complaint, chose to forgo, for strategical purposes, any relief it may have been entitled to under the federal Constitution.
Based on our holding that § 235 does not support M & N’s inverse-condemnation claim asserting a regulatory taking by the Town, we reverse the trial court’s judgment in favor of M & N on its inverse-condemnation claim and render a judg *14 ment in favor of the Town. Our conclusion pretermits the other issues raised by the Town in case no. 1110439.

B. Case No. 1110507

First, M & N argues that the trial court’s judgment granting in part the Town’s motion for a JML and thereby dismissing M & N’s § 23, Ala. Const.1901, claim was in error. The trial court determined that, pursuant to Willis v. University of North Alabama, 826 So.2d 118 (Ala.2002), § 23 was not applicable to the Town’s actions.
Section 23, entitled “Eminent domain,” provides:
“That the exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected; but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner; provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved; but just compensation shall, in all cases, be first made to the owner; and, provided, that the right of eminent domain shall not be so construed as to allow taxation or forced subscription for the benefit of railroads or any other kind of corporations, other than municipal, or for the benefit of any individual or association.” [6]
Further, this Court set forth the following concerning the power of eminent domain and its limitations in Gober v. Stubbs, 682 So.2d 430, 433-34 (Ala.1996):
“The power of eminent domain does not originate in Article I, § 23. Instead, it is a power inherent in every sovereign state. Section 23 merely places certain limits on the exercise of the power of eminent domain. This Court stated in Steele v. County Commissioners, 83 Ala. 304, 305, 3 So. 761, 762 (1887):
“ ‘The right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in, and belonging to every sovereign State. The only qualification of the [inherent] right is, that the use for which private property may be taken shall be public.... The constitution [of our State] did not assume to confer the power of eminent domain, but, recognizing its existence, [further] limited its exercise by requiring that just compensation shall be made.’
“In order for an exercise of eminent domain to be valid under § 23, two requirements must be met. See Johnston v. Alabama Public Service Commission, 287 Ala. 417, 419, 252 So.2d 75, 76 (1971). First, the property must be taken for a public use and, with one excep *15 tion inapplicable here, it cannot be taken for the private use of individuals or corporations. This first restriction is no more than a restatement of a requirement inherent in a sovereign’s very right to exercise eminent domain. See Steele, 88 Ala. at 305, 3 So. at 762. Second, ‘just compensation [must be paid] for any private property taken.’ Johnston, 287 Ala. at 419, 252 So.2d at 76.”
(Footnotes omitted.)
In Willis, a property owner owned property across the street from a parking lot owned by the University of North Alabama (“UNA”). UNA built a multilevel parking deck on its parking lot; it was assumed that the construction of the parking deck reduced the value of the property owner’s property. As a result, the property owner “filed an inverse-condemnation action against UNA, based on the allegation that UNA ‘took’ his property without ‘just compensation,’ in violation of § 23....” 826 So.2d at 119. This Court held that even though the property owner’s property was injured, “since no portion of Willis’s property was ‘taken,’ or applied to public use by UNA, UNA was not required to compensate Willis under § 23.” 826 So.2d at 121. Also significant to the holding in Willis was the overruling of certain holdings in Foreman v. State, 676 So.2d 303 (Ala.1995), as follows:
“Foreman v. State, 676 So.2d 303 (Ala.1995), involved an inverse-condemnation action in which compensation was sought under § 23 of the Constitution of Alabama of 1901. In Foreman, this Court held that in ‘ “inverse condemnation actions, a governmental authority need only occupy or injure the property in question.’” 676 So.2d at 305 (quoting Jefferson County v. Southern Natural Gas Co., 621 So.2d 1282,1287 (Ala.1993)) (emphasis added in Foreman). However, in Jefferson County, the Court was applying § 235 of the Alabama Constitution, not § 23. As we have already noted, § 235 does not apply to the State. Finnell v. Pitts, 222 Ala. 290, 132 So. 2 (1930). To the extent that Foreman (and Barber v. State, 703 So.2d 314 (Ala.1997), which relied on Foreman), held that under § 23 ‘“a governmental authority need only occupy or injure the property in question,”’ those holdings are incorrect and are hereby overruled.”
Therefore, it is clear, under the plain language of § 23 and under Willis, that the trial court properly held that § 23 does not apply in this case. It is undisputed that there was not an actual taking in this case and that M & N has complained only of administrative and/or regulatory actions taken by the Town. Willis makes clear that § 23 applies when a physical taking of the property in question has occurred.[7] In the present case, M & N *16 does not allege that there was a physical taking of the property in question. We affirm the trial court’s judgment granting the Town’s motion for a JML as to M & N’s § 23 claim.[8]
Next, M & N argues that the trial court “erred in granting judgment as a matter of law on M & N’s negligence claims.” Although M & N cites general authority setting forth the elements of a negligence claim, M & N cites no authority establishing that the Town or Simpson owed M & N a duty. Instead, without citing any authority, M & N generally alleges that the Town and its employees
“had a duty to ensure that its mayor was qualified to hold office ... and to properly process and issue a business license to M & N and to Vulcan, to prevent the adoption of arbitrary and capricious moratoria targeting the property, to properly assign zoning to the property (including overseeing a proper land use study), and to properly apply its existing zoning ordinances.”
Then, without citing any facts, M & N generally alleges that the Town “breached those duties, which proximately caused damages to M & N.” M & N also generally argues, without citing any facts, that it “presented substantial evidence from which the jury could have determined that [the Town] acted negligently....”
As set forth in our standard-of-review section above, a motion for a JML is properly denied when the nonmoving party has produced substantial evidence to support each element of the party’s claim. See Cheshire, supra. M & N, the nonmov-ing party below and the cross-appellant here, has the burden of demonstrating that it produced substantial evidence to support every element of its negligence claims. M & N has failed to cite any authority to support its assertion that the Town owed M & N a duty and has failed to indicate which facts in the record constitute substantial evidence supporting the elements of its negligence claims. This Court held as follows in University of South Alabama v. Progressive Insurance Co., 904 So.2d 1242,1247-48 (Ala.2004):
“Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s (or cross-appellant’s) brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ The effect of a failure to comply with Rule 28(a)(10) is well established:
“ ‘It is settled that a failure to comply with the requirements of Rule 28(a) ([10]) requiring citation of authority for arguments provides the Court with a basis for disregarding those arguments:
“‘“When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research. Rule 28(a) ([10]); Spradlin v. Birmingham Airport Authority, 613 So.2d 347 (Ala.1993).”
“ ‘City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998). See also McLemore v. Fleming, 604 So.2d 353 (Ala.1992); *17 Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 261 (Ala.1985); and Ex parte Riley, 464 So.2d 92 (Ala.1985).’
“Ex parte Showers, 812 So.2d 277, 281 (Ala.2001). ‘[W]e cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.’ Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992).”
Based on its failure to cite any legal authority or facts demonstrating that the trial court’s JML on M & N’s negligence claims was in error, we need not consider M & N’s argument.
Next, M & N argues that the “trial court erred in dismissing M & N’s claims for negligent hiring, retention, and supervision.” M & N generally argues that “the trial court erroneously granted [the Town’s] motion to dismiss M & N’s negligent hiring, retention, and supervision claims,” but M & N does not provide this Court with any authority demonstrating that the trial court’s judgment was in error. Instead, M & N argues that “a negligent hiring and supervision claim may lie against a municipality” and that the Town “incorrectly argued that it could have no vicarious liability for the negligence of its employees because of discretionary function immunity.” However, M & N does not provide this Court with any argument or authority demonstrating that the trial court’s judgment was in error. Therefore, we need not consider this argument. See Rule 28(a)(10), Ala. R.App. P., and Progressive Insurance, supra.
Next, M & N argues that the “trial court erred in excluding evidence of Simpson’s prior convictions.” In City of Birmingham v. Moore, 631 So.2d 972, 974 (Ala.1994), this Court held that “[t]he decision to admit or to exclude evidence is within the discretion of the trial judge, and we will not reverse such a decision absent an abuse of discretion.” This Court also held in Moore that
“the mere showing of error is not sufficient to warrant a reversal; it must appear that the appellant was prejudiced by that error. Rule 45, [Ala.] R.App. P. Industrial Risk Insurers v. Garlock Equip. Co., 576 So.2d 652, 658 (Ala.1991); Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991).”
681 So.2d at 973-74. In the present case, M & N has argued only that the trial court erred by excluding Simpson’s prior convictions, not that the trial court exceeded its discretion in doing so. M & N generally alleges that it was prejudiced by the exclusion of the evidence of Simpson’s prior convictions, but it offers no explanation as to how it was prejudiced. M & N has failed to demonstrate that the trial court exceeded its discretion in excluding the evidence and, thus, has failed to demonstrate reversible error on the part of the trial court.
Lastly, M & N argues that the “trial court erred in granting judgment as a matter of law on M & N’s wantonness claims against Simpson” and that the “trial court erred in charging the jury on the affirmative defense of justification on M & N’s intentional interference claim.” However, M & N fails to cite authority supporting these arguments. M & N does make general allegations concerning the facts to support its argument that the trial court’s JML for Simpson on its wantonness claim was in error; however, it does not direct this Court’s attention to specific facts supporting its argument. Therefore, we need not consider these arguments. See Rule 28(a)(10), Ala. R.App. P., and Progressive Insurance, supra.[9]

*18
Conclusion

Based on the foregoing, in case no. 1110439, we hold that § 235 does not support M & N’s inverse-condemnation claim that is based upon administrative and/or regulatory actions taken by the Town; thus, we reverse the trial court’s judgment in favor of M & N on its inverse-condemnation claim and render a judgment in favor of the Town. In case no. 1110507, we affirm the trial court’s judgment.
1110439 — REVERSED AND JUDGMENT RENDERED.
MALONE, C.J., and WOODALL, STUART, BOLIN, SHAW, and AVISE, JJ., concur.
MURDOCK, J., concurs in the result.
1110507 — AFFIRMED.
MALONE, C.J., and WOODALL, STUART, BOLIN, SHAW, and WISE, JJ., concur.
MURDOCK, J., dissents.

. The Town's moratorium on the acceptance of the applications for use permits, building permits, right-of-way permits, zoning classification, variances, special exceptions, or business licenses relating to M & N’s property was for 90 days and was to allow the Town time to conduct a study to determine the best use for the land. At the expiration of 90 days, on August 3, 2004, the Town extended the moratorium for an additional 90 days.

. M & N initially brought its inverse-condemnation claim under both the Fifth Amendment to the United States Constitution and the Alabama Constitution. Based on M & N's reliance upon the Fifth Amendment the Town removed the case to the United States District Court for the Northern District of Alabama based upon federal-question jurisdiction. In response, M & N voluntarily dismissed its Fifth Amendment claim and filed an amended complaint in the trial court making no reference to the Fifth Amendment. Instead, M & N alleged that the Town’s actions violated Art. I, § 23, Ala. Const. 1901, Art. XII, § 235, Ala. Const.1901, and § 18-1A-1 et seq., Ala.Code 1975.

. On November 27, 2006, the Town filed a motion to dismiss several of M & N's claims against the Town. The Town argued that the following claims of M & N's against the Town were due to be dismissed: the wrongful-interference-with-contractual-or-business-relations claim; all wantonness claims; and the negligent hiring, retention, and supervision claim. M & N filed a response. On March 16, 2007, the trial court granted the Town’s motion to dismiss in part, thereby dismissing M & N's following claims against the Town: wrongful interference with contractual or business relations; negligent hiring, retention, and supervision; and all wantonness claims.

. Rule 17 provides, in pertinent part:
‘‘(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person’s own name without joining the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.”

. As explained in Simpson I, the Noerr-Pennington doctrine, under which private citizens are afforded immunity under certain circumstances, is set forth in Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

. We note that the plain language of § 23 prevents the State, not municipalities, from taking property without just compensation. See Art. I, § 36, Ala. Const. 1901 ("[W]e declare that everything in this Declaration of Rights is excepted out of the general powers of government, and shall forever remain inviolate.”) (emphasis added). In this case, the legislature enacted Act No. 2004-19, which annexed the at-issue property. Therefore, § 23 is applicable because of the legislature's involvement with the Town's annexation of the at-issue property.

. The dissent discusses Alabama Department of Transportation v. Land Energy, Ltd., 886 So.2d 787 (Ala.2004), which was based upon the "law of the case” doctrine, not upon an interpretation by this Court of § 23 allowing for the recovery of a regulatory "taking.” See, e.g., id. at 796 ("Under the governing 'law of the case,' ..."), 802 ("Given the particular procedural and evidentiary posture of this case, and given the 'law of the case’ established by the jury instructions, we conclude that the jury was entitled to find that LE possessed an identifiable property-use interest before the condemnation. In that regard, one feature of the law of the case, binding on the jury, was the instruction that if it found to its reasonable satisfaction that ADOT [the Alabama Department of Transportation] 'by acquiring the surface above the mineral estate of [LE] improperly foreclosed the possibility that [LE] could recover its minerals,’ it would be the duty of the jury to determine damages”), and 803 ("Although there was testimony offered by ADOT contrary to some of the testimony recited above, under the applicable standard of review we must construe the record in favor of LE and look to see only if *16 there is substantial evidence in the record supporting the jury’s finding that a talcing, as defined by the jury instructions, occurred.”) (some emphasis added).

. We note that M & N also cites Blankenship v. City of Decatur, 269 Ala. 670, 115 So.2d 459 (1959), and Opinion of the Justices No. 119, 254 Ala. 343, 48 So.2d 757 (1950), in support of its argument regarding § 23. However, those cases are distinguishable in that both of those cases involved a physical taking of property, unlike the present case.

. We note that the Town and Simpson argued that M & N was not the real party in interest *18 under Rule 17, Ala. R. Civ. P. However, that issue is inconsequential because, assuming that M & N is the real party in interest for either some or all the claims, the Town and Simpson have prevailed.