SHAW, Justice
(dissenting).
The issue in this case is whether Ala. Code 1975, § 30-3-1, properly provides the trial court with the power to order the parties to a divorce to pay the - college *84 expenses of the children of their marriage, even if those children are no longer minors. I believe that the language of § 30-3-1 provides the trial court with such power; therefore, I respectfully dissent.
The petitioner, Carolyn Sue Christopher (“the mother”), and Charles Phillip Christopher (“the father”) were divorced in 2010. The father subsequently requested the trial court to order the mother to pay a portion of the college expenses of their child, C.C., who was reaching the age of 19 and enrolling in college.[16] The trial court ordered the mother to pay a portion of the expenses; on certiorari review, this Court addresses whether § 30-3-1 gives the trial court the power to do so.
I.
In determining the meaning of legislation, our inquiry first begins with its language, and, if the meaning of the language is plain, our analysis ends there. Ex parte McCormick, 932 So.2d 124, 132 (Ala.2005). “[W]e must look first to the plain meaning of the words the legislature used.” DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 277 (Ala.1998). This Court in DeKalb County LP Gas explained:
“In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.” ’ ”
729 So.2d at 275-76 (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), additional citations omitted). See also Ex parte Ankrom, 143 So.3d 58, 71 (Ala.2013) (applying the plain-meaning rule discussed in DeKalb County LP Gas to define the phrase “a child” found in Ala.Code 1975, § 26-15-3.2).
Section § 30-3-1 states, in pertinent part: “Upon granting a divorce, the court may give the custody and education of the children of the marriage to either father or mother, as may seem right and proper....” It is undisputed that this Code section allows courts to order custody and payment for the education and support of the children of divorcing parents;[17] the issue here, however, is whether such payment can be required when the “children of the marriage” are not minors.
The operable portion of the Code section, I believe, is the phrase “the children of the marriage.” It does not refer to the custody or education of “a child” or of “minor children”; instead, the plain language “the children of the marriage” refers to the offspring of the divorcing par *85 ents’ marriage. Both adult children of married parents and minor children of married parents are “the children of the marriage.” By the ordinary and plain usage of the phrase “children of the marriage,” C.C. is the mother’s and the father’s child and one of the “children of the marriage” even though he is not a minor. See Ex parte Brewington, 445 So.2d 294, 296 (Ala.1983) (noting that, although this Court had previously “held that the term ‘children’ as used in § 30-3-1” “applied] only to minor children,” “[t]he statute ... does not express such a limitation”).
The phrase “children of the marriage” is sufficiently clear to apply to the facts of this case. I would not isolate the word “children” from the rest of the phrase— “of the marriage” — to draw a definition of that single word, because it is the phrase as a whole that is determinative of its meaning. The main opinion turns to dictionaries that define the word “child” (outside the context of the phrase “children of the marriage”) but actually does not primarily focus on the definitions of that word. Instead, it draws its holding that the word “child” “unambiguously means a ‘minor’ ” from the definition of “parent-child relationship” found in Black’s Law Dictionary. I see no need to turn to dictionaries, however: it is natural, plain, ordinary, and common for parents to refer to their adult sons or daughters as “the children of their marriage.” Even the main opinion, in its first paragraph, refers to C.C., who is an adult, as the mother’s “child,” and the mother also does so in her certiorari petition. Petition, at 5. But if we were to engage in an analysis of the various definitions found in dictionaries, I note that the word “child” does not exclusively refer to minors. Merriam-Webster’s Collegiate Dictionary includes in the definition of “child”: “a son or daughter of human parents ... [a] DESCENDANT.... ” Merriam-Webster’s Collegiate Dictionary 214 (11th ed. 2003) (capitalization in original).[18] Black’s Law Dictionary defines “child,” among other definitions, as “a son or daughter.” Black’s Law Dictionary 271 (9th ed. 2009). A previous edition of Black’s defined “child” primarily as “[p]rogeny; offspring of parentage.” Black’s Law Dictionary 239 (6th ed. 1990). These sources may define “child” as minors but also define “child” in a way not restricted to minors. Thus, the phrase “children of the marriage” does not refer to only “[minor] children of the marriage.” Here, the main opinion’s approach rewrites the Code section by inserting the word “minor” before the word “children” to alter the meaning of the entire phrase, despite quoting language stating that this Court may not “ ‘ “insert in a statute that which has been omitted.” ’ ” 145 So.3d at 66 (quoting Pace v. Armstrong World Indus., Inc., 578 So.2d 281, 284 (Ala.1991), quoting in turn 73 Am.Jur.2d Statutes § 203 (1974)). Using a dictionary, it would be just as appropriate to also insert “adult or minor”; I would insert nothing, as “children of the marriage” can refer to both adult and minor children of the marriage.[19]
*86 There is also no restriction on what type of “education” is contemplated by the Code section, whether it be primary or higher education, either of which may be applicable to both adult or minor “children of the marriage.” Because § 30-3-1 refers to the unspecified education of offspring of the divorced couple with no limitation on age, I do not believe the trial court here acted outside its powers under that Code section in ordering the mother to pay a portion of her 19-year-old son’s college tuition.[20]
It might seem odd that the legislature enacted a statute with language allowing a trial court to order divorcing spouses to pay for the educational expenses of an adult child of their marriage. Nevertheless, we must enforce the legislature’s will as expressed in the plain language of the text it enacted, lest we violate the separation-of-powers doctrine:
“It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.”
DeKalb County LP Gas, 729 So.2d at 276.[21]
II.
Because I believe that the language of § 30-3-1 provides the trial court with the power to order postminority educational support, I must address the remaining issue raised by the mother, specifically whether the Court of Civil Appeals’ decision conflicts with Ex parte E.R.G., 73 So.3d 634, 643 (Ala.2011), in which this Court, according to the mother, “recog *87 nized the fundamental right of fit parents to control and direct the upbringing of their children.” Petition, at 5. The mother further argued that “she ha[d] a fundamental right to direct the education of her child,” Id. (emphasis added.)
I believe that the Court of Civil Appeals thoroughly addressed that argument in its opinion. See Part II of Christopher v. Christopher, 145 So.3d 42, 49 (Ala.Civ.App. 2012). Although the Supreme Court precedent cited by the mother in her brief on appeal speaks to the constitutional protections regarding a parent’s fundamental right to direct the education of minor children, C.C. is not a minor. Further, this case does not involve a decision of a family or of parents in directing the education of their child; instead, it involves a dispute between the parents as to how to pay for the education the parties apparently had already agreed would occur: the evidence at trial indicated that “both parents anticipated and agreed, while they were married, that their children would attend college.” Christopher, 145 So.3d at 51 n. 1. The record indicates that, at trial, the nature of their dispute did not concern whether C.C. should attend college, but how his college-education expenses should be paid. As the Court of Civil Appeals noted:
“[WJhen divorced parents with equal fundamental parental rights become embroiled in a dispute as to the funding for that education, a court may resolve that issue without implicating the Fourteenth Amendment substantive due-process rights of either parent. If not, one parent could successfully override the fundamental rights of the other parent.”
Id. at 51 (footnote and emphasis omitted).
I have, in the past, expressed concern regarding the advisability of the government “operating in areas traditionally reserved to families or individuals.” Perdue v. Green, 127 So.3d 343, 407 (Ala.2012) (opinion on return to remand) (Shaw, J., concurring specially). But the issue here is not whether I agree with the law: “The judicial branch of state government does not have the authority to reject an act that is the duly enacted, constitutional exercise of the legislature’s inherent power.” Id. I see no argument before us indicating that § 30-3-1 is unconstitutional as applied in this case. Of course, in some other context not found here, it is possible for a court to apply § 30-3-1 erroneously or in a manner that is absurd or that might violate fundamental rights (all of which are subject to a reversal by an appellate court). Such abstract questions are not before us:
“Some of the arguments made ... are premised on hypothetical situations, different from the facts before us, in which the Code section might be either unconstitutional as applied or seemingly unwise in its application. It goes without saying that we cannot strike down the application of the Code section ... merely because the Code section might be unconstitutionally applied in some other context.”
Ex parte Ankrom, 143 So.3d at 58 (Shaw, J., concurring in part and concurring in the result). Because the trial court’s actions were in accord with § 30-3-1, I respectfully dissent from reversing the judgment of the Court of Civil Appeals.

. The undisputed testimony at trial indicated that the mother and father had planned to pay for their children's college educations, had set up special savings accounts to do so, and had actually paid one older child’s college expenses.

. "In Alabama, a single (general and vague) statute[, § 30-3-1,] has been relied upon to empower the courts to award child support and custody while a divorce action ís pending, upon a judgment of divorce, after a divorce, and to modify prior custody and child support awards. The Alabama Legislature has not seen fit to replace or clarify that statute despite the thousands of child support cases decided each year in this state.”
1 Judith S. Crittenden & Charles P. Kindre-gan, Jr., Alabama Family Law § 24:3 (2008) (footnote omitted).

. The main opinion notes that the Michigan Supreme Court, in Smith v. Smith, 433 Mich. 606, 612, 447 N.W.2d 715, 716 (1989), consulted "Webster's Ninth New Collegiate Dictionary (1985),” "to shed light on the meaning of 'child' in a child-custody statute.” 145 So.3d at 64-65. That dictionary defines child, among other things, as “a son or daughter of human parents ... [a] DESCENDANT,” and not exclusively as a minor. Webster’s Ninth New Collegiate Dictionary 233 (1985).

. It is not absurd that the legislature would provide the power to place the custody of, or to order the payment of support for, some adult children of divorcing parties, such as disabled children. See Brewington. Nor is it objectively absurd for the legislature to pro *86 vide that a trial court may order a divorcing spouse to pay the educational expenses of the divorcing parties' adult children. I express no opinion as to whether these are good policies or whether I agree with them, because " '[i]t is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama.' ” Suttles v. Roy, 75 So.3d 90, 104 (Ala.2010) (Shaw, J., concurring specially, and quoting Boles v. Paris, 952 So.2d 364, 367 (Ala. 2006)).

. Because the language of the Code section is clear, there is no need to resort to the "common law,” which is superseded by § 30-3-1 or more recent Alabama caselaw, such as Brewington. See Ala.Code 1975, § 1-3-1 (providing that the common law of England, "together with” the "laws and institutions of this state,” shall be "the rule of decisions,” unless the common law of England is "inconsistent with the Constitution, laws and institutions of this state,” or has been "altered or repealed by the Legislature”).

. The main opinion explicitly overrules this Court's prior decision in Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), which held that the powers found in § 30-3-1 allowed the payment of educational support to "children of the marriage” who are not minors. This effectively overrules the decision in Brewington, supra, which held that § 30-3-1 allowed the trial court to order one of the divorcing parents to continue to pay support for his disabled child even after the child reached the age of majority. As noted above, Brewington held that the language of § 30-3-1 was not limited to minors. The main opinion is premised on the notion that "when a child becomes an adult” he or she is "ineligible for parental support” and that the plain meaning and "common-law” definition of the word "child” in this Code section refers only to minor children. 145 So.3d at 64. The main opinion attempts to avoid its impact on the holding in Brewington, noting that it is "not before us”; nevertheless, the inconsistency of that decision with the holding of the main opinion is clear.